# Illinois Official Reports

## Appellate Court

*In re Jian L.*, **2018 IL App (4th) 170387**

| | |
|---|---|
| Appellate Court Caption | *In re* JIAN L., a Person Found Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Jian L., Respondent-Appellant). |
| District & No. | Fourth District<br>Docket No. 4-17-0387 |
| Filed | January 29, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 17-MH-4; the Hon. Michael Q. Jones, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | John B. Hensley, of Hensley Law Office, of Champaign, for appellant.<br><br>Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and James C. Majors, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Presiding Justice Harris and Justice Knecht concurred in the judgment and opinion. |

**OPINION**

¶ 1    In April 2017, respondent, Jian L., was voluntarily admitted to Presence Covenant Medical Center for inpatient psychiatric care. On May 5, 2017, he filed a request to be discharged. That same day, the State filed a petition for involuntary admission under section 3-601 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3-601 (West 2016)). In it, the State alleged that respondent suffered from a mental illness and required further hospitalization to prevent harm to himself or others. On May 11, 2017, respondent withdrew his request to be discharged and argued that the State's petition for involuntary admission was no longer necessary. The trial court rejected that argument and, after a hearing, granted the State's petition for involuntary admission.

¶ 2    Respondent appeals, arguing that (1) the trial court erred by adjudicating the State's petition for involuntary admission or, in the alternative, (2) the certificates attached to the State's petition for involuntary admission failed to comply with section 3-203 of the Code (*id.* § 3-203). We disagree and affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On May 5, 2017, the State filed a petition for involuntary admission of respondent to a mental health facility under section 3-601 of the Code. *Id.* § 3-601. The petition alleged that respondent voluntarily admitted himself and later—on May 5, 2017—submitted a written notice of desire to be discharged. *Id.* §3-403. The State alleged in its petition that defendant had a mental illness and was in need of hospitalization to prevent him from harming himself or others.

¶ 5    Six days after the State filed its petition, respondent withdrew his request for discharge.

¶ 6    That same day, the trial court conducted a hearing on the State's petition for involuntary admission. Respondent, represented by counsel, argued that the hearing on the State's petition for involuntary admission must cease because respondent had withdrawn his desire to be discharged and was willing to remain voluntarily admitted. Therefore, according to respondent, the State had no need to proceed on its petition for involuntary admission. The trial court rejected respondent's argument and conducted a hearing.

¶ 7    At the hearing, psychiatrist Feiting Su testified that on April 16, 2017, respondent was voluntarily admitted to Presence Covenant Medical Center because he was hearing voices and suffering from paranoia. After respondent's admission, Su observed paranoid behavior by respondent, who believed that his life was in danger and that people were coming to shoot him and his family. Respondent used his furniture to barricade his room. Respondent had been aggressive with staff, requiring "injections of medications on a regular basis." On one occasion, respondent barricaded himself and Su inside his room. When staff intervened, respondent became aggressive. According to Su, respondent believed that the staff was trying to poison him, and he often refused to eat or take his medications. Su diagnosed respondent with schizo-affective disorder, bipolar type. Su opined that respondent was a danger to himself and others and could not provide for his own basic physical needs. During his time at Presence Covenant Medical Center, respondent's mental health worsened. Su testified that respondent required long-term psychiatric care to address his mental illness.

¶ 8    After the hearing, the trial court granted the State's petition and ordered that respondent was subject to involuntary admission for 90 days.

¶ 9    This appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11    Respondent argues that (1) the trial court erred by adjudicating the State's petition for involuntary admission or, in the alternative, (2) the certificates attached to the State's petition for involuntary admission failed to comply with section 3-203 of the Code.

¶ 12                                    A. Mootness

¶ 13    Respondent and the State agree that this appeal is moot because respondent is no longer admitted to a mental health institution. But respondent claims that we can nonetheless hear and decide this appeal under the exception to the mootness doctrine for cases that are capable of repetition yet avoiding review. See *In re Alfred H.H.*, 233 Ill. 2d 345, 358-60, 910 N.E.2d 74, 82-83 (2009). The State concedes that this appeal qualifies for review under that exception. We accept the State's concession.

¶ 14                    B. Mental Health and Developmental Disabilities Code

¶ 15    Section 3-400 of the Code (405 ILCS 5/3-400 (West 2016)) establishes a process for individuals to voluntarily admit themselves to a mental health facility in the following manner:

> "Any person 16 or older, including a person adjudicated a person with a disability, may be admitted to a mental health facility as a voluntary recipient for treatment of a mental illness upon the filing of an application with the facility director of the facility if the facility director determines and documents in the recipient's medical record that the person (1) is clinically suitable for admission as a voluntary recipient and (2) has the capacity to consent to voluntary admission."

¶ 16    Section 3-403 (*id.* § 3-403) addresses how a voluntarily admitted respondent can request to be discharged from a mental health facility:

> "A voluntary recipient shall be allowed to be discharged from the facility at the earliest appropriate time, not to exceed 5 days *** after he gives any treatment staff person written notice of his desire to be discharged unless he either withdraws the notice in writing or unless within the 5[-]day period a petition and 2 certificates conforming to the requirements of paragraph (b) of Section 3-601 and Section 3-602 are filed with the court. Upon receipt of the petition, the court shall order a hearing to be held within 5 days, *** to be conducted pursuant to Article IX of this Chapter."

¶ 17    Section 3-601(a) of the Code (*id.* § 3-601(a)) provides the following, concerning who may file the petition for involuntary admission referenced above in section 3-403 of the Code:

> "When a person is asserted to be subject to involuntary admission on an inpatient basis and in such a condition that immediate hospitalization is necessary for the protection of such person or others from physical harm, any person 18 years of age or older may present a petition to the facility director of a mental health facility in the

county where the respondent resides or is present. The petition may be prepared by the facility director of the facility."

¶ 18 Section 3-602 of the Code (*id.* § 3-602) provides the following about the two certificates that must be attached to a petition for involuntary admission:

"The petition shall be accompanied by a certificate executed by a physician, qualified examiner, psychiatrist, or clinical psychologist which states that the respondent is subject to involuntary admission on an inpatient basis and requires immediate hospitalization."

¶ 19 Section 3-203 of the Code (*id.* § 3-203) provides that every petition, certificate, and proof of service required by the Code "shall be executed under penalty of perjury as though under oath or affirmation, but no acknowledgement is required."

¶ 20                              C. Statutory Construction of the Code

¶ 21 Respondent argues that the trial court erred by adjudicating the State's petition for involuntary admission. Respondent's argument addresses the following factual scenario: A patient has voluntarily admitted himself under section 3-400 of the Code and later makes a written request for discharge under section 3-403 of the Code. Within five days, the State responds by filing a petition for involuntary admission under section 3-403 of the Code. The patient then abandons his request for discharge. Under those circumstances, respondent argues that the State may no longer proceed on its petition for involuntary admission. The Code does not explicitly address that specific factual scenario. We therefore construe the Code as a whole to determine how to resolve respondent's claim.

¶ 22 "The primary objective in construing a statute is to ascertain and give effect to the intent of the legislature." *People v. Casas*, 2017 IL 120797, ¶ 18. "The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning." *Id.* "A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation." *Id.* "The court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *Id.* "Also, a court presumes that the General Assembly did not intend to create absurd, inconvenient, or unjust results." *Id.* Because involuntary commitment infringes on a patient's liberty interests, statutory language involving involuntary commitment must be construed strictly in favor of the patient. *In re Houlihan*, 231 Ill. App. 3d 677, 681, 596 N.E.2d 189, 192 (1992).

¶ 23 When a patient voluntarily admits himself under section 3-403 of the Code, the State cannot file a petition for involuntary commitment until the patient has made a written request for discharge. *In re Splett*, 143 Ill. 2d 225, 234, 572 N.E.2d 883, 887 (1991). That rule furthers the Code's purpose of encouraging voluntary admissions by guaranteeing that voluntary patients have the right to request discharge. *Id.* at 234-35.

¶ 24 In this case, the State complied with *Splett* and section 3-403 the Code by waiting to file a petition for involuntary admission until after respondent made a written request for discharge. The State further complied with section 3-403 by filing the petition for involuntary admission within five days of respondent's written request for discharge.

¶ 25 The Code does not prohibit the State from continuing to proceed on a properly filed petition for involuntary admission after a respondent has withdrawn his request for discharge.

We decline to read such a limitation into the Code. See *People v. Shinaul*, 2017 IL 120162, ¶ 17 ("Absent express language in the statute providing an exception, we will not depart from the plain language and read into the statute exceptions, limitations, or conditions that the legislature did not express.").

¶ 26    The relevant sections of the Code set up a careful structure of events involving respondents who voluntarily admit themselves to a mental health facility. If we were to adopt respondent's reading of the Code, that careful structure would be disrupted. Under that reading, a respondent could continually request discharge, wait to see if the State filed a petition for involuntary admission, and then "pull the plug" on those involuntary admission proceedings by withdrawing his request for discharge. Such a circular process could continue *ad infinitum* at tremendous cost to the State and the judicial system. We conclude that the legislature did not intend such an absurd and inefficient result when it drafted the Code.

¶ 27    We therefore conclude that proceedings on a petition for involuntary admission filed under section 3-403 of the Code may continue despite the respondent's withdrawing his request for discharge from voluntary admission.

¶ 28                    D. Propriety of the Certificates Attached to the State's Petition

¶ 29    Respondent argues that the two certificates attached to the State's petition for involuntary admission were not "executed under penalty of perjury as though under oath or affirmation," as required by section 3-203 of the Code (405 ILCS 5/3-203 (West 2016)).

¶ 30                    1. *Certificate Requirements*

¶ 31    Section 3-403 of the Code provides that the State's petition for involuntary admission must include two "certificates conforming to the requirements of paragraph (b) of Section 3-601 and Section 3-602." *Id.* § 3-403.

¶ 32    Sections 3-601 and 3-602 pertain to the requirements for emergency petitions for involuntary admission of otherwise nonadmitted respondents. Section 3-601 describes the necessary contents of the petition itself. *Id.* § 3-601.

¶ 33    Section 3-602 requires that the petition be accompanied by a certificate executed by a qualified person who has examined the respondent. *Id.* § 3-602. The certificate must include (1) a statement that the respondent is subject to involuntary admission and requires immediate hospitalization, (2) a statement that the examiner has examined the respondent within the past 72 hours, and (3) the examiner's clinical observations and information relied on in reaching a diagnosis. *Id.*

¶ 34    In addition, section 3-203 of the Code provides that "[e]very petition, certificate and proof of service required by this Chapter shall be executed under penalty of perjury as though under oath or affirmation, but no acknowledgement is required." *Id.* § 3-203.

¶ 35                    2. *Respondent's Argument*

¶ 36    Respondent cites the requirements of sections 3-403 and 3-203 of the Code and then asserts that "neither of the certificates of Drs. Su and Roberts were so executed." We presume that respondent's argument is that the certificates of Dr. Su and Dr. Roberts were not "executed under penalty of perjury as though under oath or affirmation," as required by section 3-203. Respondent argues further that because the doctors' certificates were not

executed under penalty of perjury, the trial court's judgment of involuntary admission is "erroneous and of no effect" and must be reversed.

¶ 37 In *In re Wheeler*, 152 Ill. App. 3d 371, 373, 504 N.E.2d 524, 526 (1987), the Second District held that deficiencies in a petition or certificate brought under the Code do not prevent a trial court from adjudicating a petition for commitment. The appellate court explained, as follows:

"[A]ny deficiencies in the petition or accompanying certificates could not affect the court's power to enter the order of commitment. Since respondent does not challenge the sufficiency of the evidence on which the court based its finding, it would not serve the interest of respondent or of society to reverse the trial court's decision because of technical defects in the first certificate." *Id.*

¶ 38 Here, as in *Wheeler*, any deficiencies in the certificates attached to the State's petition did not prevent the court from adjudicating the petition. Importantly, the allegations in the petition were attested to, under oath, at the May 2017 hearing. Respondent does not challenge the sufficiency of that evidence. The purpose of all pleading verifications is to ensure " 'that the allegations are brought truthfully and in good faith.' " *People v. Hommerson*, 2014 IL 115638, ¶ 9, 4 N.E.3d 58 (quoting *People v. Collins*, 202 Ill. 2d 59, 67, 782 N.E.2d 195, 199 (2002)). In this case, the testimony at the May 2017 hearing establishes that the allegations of the petition were brought in good faith. We decline to disturb the trial court's judgment because of a supposed technical violation in the certificates attached to the State's petition.

¶ 39                                    III. CONCLUSION

¶ 40 For the foregoing reasons, we affirm the trial court's judgment.

¶ 41 Affirmed.