2019 IL App (4th) 170838

NO. 4-17-0838

FILED
April 4, 2019
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| MARK J. KASPRZYK, | ) | Macoupin County |
| Petitioner-Appellant, | ) | No. 13D90 |
| and | ) | |
| MARIANNE KASPRZYK, | ) | Honorable |
| Respondent-Appellee. | ) | April Troemper, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Justice Harris concurred in the judgment and opinion.
Justice Turner dissented, with opinion.

**OPINION**

¶ 1        In August 2017, the trial court entered an order extending petitioner Mark J.

Kasprzyk's maintenance obligation to respondent, Marianne Kasprzyk. Mark appeals the order

arguing (1) the court used inapplicable statutory guidelines to modify the length of the

maintenance award and (2) the court abused its discretion in ordering maintenance. We affirm.

¶ 2                                I. BACKGROUND

¶ 3        Mark and Marianne were married in January 1989. In June 2013, Mark filed a

petition for dissolution of marriage. At the time the petition was filed, the parties were both 52

years old. The parties share an adult daughter, born in 1993. Both parties sought maintenance. In

his May 2014 position statement, Mark had been subject to a layoff.

¶ 4 A hearing was held on October 22, 2014. No transcript of the hearing appears in the record. A docket entry dated October 22, 2014, states the following:

> "Cause called for hearing on all remaining issues. Both parties present in person with Attorneys [Brent A.] Cain and [Will] Hebron. Witnesses sworn; evidence heard. Agreements reached. The Court orders Attorney Cain to prepare a written judgment with a blank for the maintenance amount and submit to the Court. Cause continued for written Order."

¶ 5 By letter dated November 6, 2014, Cain, Mark's counsel, informed the trial court it had tendered a proposed judgment to Hebron, who made some objections. Cain stated he made some of the requested revisions. Cain recommended the trial court "enter the enclosed Judgment unless [it] hear[d] from Mr. Hebron."

¶ 6 On November 18, 2014, the trial court entered the order dissolving the marriage. In the dissolution order, the trial court divided marital assets and debts and awarded maintenance. Mark was awarded the marital residence, the 2006 Hummer H3 vehicle, personal property in his possession, his retirement and pension accounts, his checking and savings accounts, and his Prudential stock and life insurance. Mark was responsible for all debt related to the marital home. The court ordered Mark to pay the car insurance and cell phone bill for their daughter, who was living with Marianne while attending college. Mark was further ordered to pay Marianne "$150 per month for November and December, 2014 toward room, board and schooling expenses of the parties' daughter." The court reserved the issue of additional college expenses. Mark was to maintain health insurance for the daughter. Both parties were ordered to

share equally their daughter's healthcare expenses not covered by insurance. The trial court awarded Marianne her retirement and IRA accounts, her checking and savings accounts, the 2012 Kia Optima, and personal property in her possession.

¶ 7        Regarding maintenance, the trial court ordered maintenance for a period of two years but authorized Marianne to seek an extension of maintenance before the two-year period expired:

> "The Court hereby awards spousal maintenance payable by [Mark] to [Marianne] in an amount of $500 per month commencing Dec-10th, 2014, and on the 10th day of the month thereafter for 2 years at which time maintenance shall be subject to review. Unless [Marianne] files a Petition to Extend Maintenance within said period maintenance shall automatically terminate. The burden is on [Marianne] to establish a continued need for maintenance. Maintenance shall terminate upon the occurrence of any of the events set forth in 750 ILCS 5/510(c), or a change of circumstances as allowed by law or fact."

The $500 amount, the December 10, 2014, date, and the "10th" were handwritten by the court onto blank lines.

¶ 8        Before the two-year deadline expired, Marianne, on October 26, 2016, filed a petition to extend maintenance. Marianne alleged she continued to have a need for spousal maintenance and Mark was able to provide continued maintenance payments.

¶ 9        In July 2017, a hearing was held on Marianne's petition. No transcript of the

hearing appears in the record. In lieu of the transcript, the parties submitted an agreed statement of facts to this court. According to the agreed statement, Marianne testified she lived alone in a Virden, Illinois, duplex valued at $75,000. Marianne owed approximately $58,000 on the mortgage. Marianne purchased the home after the divorce. Her mother provided the down payment. Marianne worked for Dickey John Corporation, the same employer and in the same position she was working when the marriage dissolved, continuing to earn $50,000 annually. A filing suggests Marianne worked for the same corporation since 1989. In 2017, Marianne received a $1500 bonus. The bonus was not guaranteed to occur each year. Marianne's monthly expenses were the same as they were when the parties divorced.

¶ 10        Marianne testified, since the marriage dissolved, she purchased a new car when her car "broke." The payment for the new car was approximately $30 more per month than the previous car payment. Marianne operated at a deficit each month and needed maintenance for living expenses. Marianne sent her adult daughter money.

¶ 11        On cross-examination, Marianne testified she was scheduled to earn $50,566 in 2017. She received some overtime and a bonus. Marianne also earned raises at work. In January 2016, she earned $25.82 per hour. As of May 2017, Marianne earned $27.08 an hour. In 2016, Marianne earned $55,546. Marianne's work 401(k) had a balance of $194,212.77. Marianne had an additional IRA with a balance of $13,446.79.

¶ 12        Marianne testified she donated $500 per month to her church. During the marriage, Marianne also donated 10% of her income in cash to the church. Mark did not attend church with Marianne. The parties' tax returns during the marriage do not show religious donations. During the last several years of the parties' marriage, Mark and Marianne could not

- 4 -

afford to go on a vacation. Mark did not earn vacation pay. In 2016, Marianne used 206 hours of vacation time. This included random days off, sick days, and days to take her mother to doctor's visits. Marianne went on trips with her daughter in 2016 and 2017. Marianne spent $50 per month on her adult child's clothing and $100 per month on her adult child's allowance. The daughter was no longer attending college and was pregnant.

¶ 13       Mark testified he resided alone in the marital home. The parties' daughter graduated college and lived on her own. Mark was employed at E.L. Pruitt Company. In 2016, Mark's gross income was $89,361, which included income from some dividends and a tax refund. His gross income from his employment was $88,511. Mark began a new position with E.L. Pruitt Company but earned the same salary. Mark earned $44.12 an hour. Mark helped pay expenses for his adult daughter, including $150 per month in doctor's visits and $250 per month in car repairs and maintenance, living expenses, and a personal loan. Mark also paid for his daughter's cell phone and her health insurance. He cosigned a loan for his daughter and was currently paying the bill. He also paid for her car insurance and her credit card.

¶ 14       Mark further testified he needed to take an equity loan on his home. He owed $11,528.37 on that loan. Mark had a negative balance each month after paying his debts and obligations. Mark had not been on a vacation since the divorce. He had taken trips to see his daughter. His mortgage was $59,632. Mark was worse off financially than when the parties divorced.

¶ 15       On cross-examination, Mark testified he had a retirement and pension plan through his employer. One of Mark's loans was a loan for his daughter's expenses while in college.

¶ 16        In August 2017, the trial court granted the petition to extend maintenance. The court held it considered the applicable statutory factors. The court noted the previous judge "clearly found maintenance was appropriate at the time the parties' marriage was dissolved." The court further observed had the marriage dissolved six weeks later, the previous judgment would have had to apply the maintenance formula, resulting in permanent maintenance or maintenance for a period of the length of the parties' marriage. The court considered relevant statutory factors and found maintenance appropriate. The court concluded Marianne's needs remained the same and neither party's circumstances changed significantly enough to conclude maintenance was not appropriate, particularly in light of the length of the marriage and the parties' incomes and needs when the marriage was dissolved. The court set maintenance at $450 per month and ordered it be permanent, unless modification or termination is deemed proper under section 510 of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/510 (West 2016)).

¶ 17        Mark filed a motion to reconsider. In his motion, Mark argued the trial court considered the wrong version of the statute in deciding to make the maintenance award permanent, arguing the court should have used the version applicable when the dissolution petition was filed in 2014. Mark further maintained the court erred in awarding continuing maintenance as he did not have the funds to continue paying maintenance while, as evidenced by Marianne's donations to the church, Marianne had no need for maintenance.

¶ 18        After a hearing, the trial court denied Mark's motion. The court ruled the new version of the law applied. The court also made the following comments regarding its calculation of the maintenance award:

        "The testimony was that there were tithes during the

marriage. Simply because it's not on a tax return doesn't mean cash wasn't paid. So that would be unrefuted testimony that she tithed during the marriage and she still tithes now. Technically, she can take the maintenance and use that towards her rent and other bills for her income. However you want to look at it, it all goes into the same pot. So to say that she can't use maintenance to go toward her religious conviction is not a decision this court is going to make on that. It's the standard of living that existed then and still exists now."

¶ 19 The trial court further noted its determination to award permanent maintenance followed a consideration of the factors in sections 504(a) (*id.* § 504(a)) and 510(a-5) (*id.* § 510(a-5)). The court did not believe the old law should apply as there had "been a finality and then there [are] new circumstances that arrive[d]." The court found convincing other Fourth District cases involving lengthy marriages and income disparities where this court concluded it was an abuse of discretion to order only rehabilitative maintenance: *In re Marriage of Selinger*, 351 Ill. App. 3d 611, 814 N.E.2d 152 (2004), and *In re Marriage of Drury*, 317 Ill. App. 3d 201, 740 N.E.2d 365 (2000).

¶ 20 This appeal followed.

¶ 21 II. ANALYSIS

¶ 22 On appeal, Mark presented his abuse-of-discretion argument first and his statutory argument second. Because the resolution of the statute-based argument resolves the question of which version of the Dissolution Act applies, a matter applicable in consideration of the first

argument, we will address the arguments in reverse order.

¶ 23    Beneficial to the consideration of both arguments is a summary of the legal mechanisms for the review of maintenance awards. Under Illinois law, all maintenance awards are reviewable. *Selinger*, 351 Ill. App. 3d at 617. A party may seek to modify, terminate, or review maintenance. See 750 ILCS 5/510(a-5) (West 2016). "[R]eview proceedings and modification proceedings are separate and distinct mechanisms by which reconsideration of maintenance can occur." *In re Marriage of Golden*, 358 Ill. App. 3d 464, 469, 831 N.E.2d 1177, 1182 (2005). A review proceeding follows a court order that specifically allows for the review of that order. *In re Marriage of Heasley*, 2014 IL App (2d) 130937, ¶ 25, 25 N.E.3d 1137. Typically, in such cases, it is preferred that the court advises the party on the issues to be addressed and who carries the burden of proof. *Id.* ¶ 27. In contrast, when the previous order does not provide a court order for review, a party may seek review of a maintenance order through modification proceedings under the statute. Modification proceedings, unlike review proceedings, require the movant to prove a substantial change in circumstances. *Id.* ¶ 26.

¶ 24    Here, the original maintenance order contained a court-ordered provision for review. Marianne sought to extend her maintenance through review proceedings.

¶ 25            A. The Trial Court Did Not Err by Not Applying the
            Statutory Law in Effect When the Parties' Marriage Dissolved

¶ 26    On appeal, Mark makes two challenges to the trial court's decision to apply the version of the Dissolution Act effective at the time Marianne filed her petition to extend maintenance. In his opening brief, Mark contends the court should have applied the version of the Dissolution Act that was effective at the time the initial order was entered and not the newer version that contained statutory guidelines for the duration of a maintenance award (see 750

ILCS 5/504(b-1) (West Supp. 2015)). In his reply brief, Mark contends the court should have considered the version of the Dissolution Act that became effective on January 1, 2017.

¶ 27    Consideration of Mark's arguments on appeal involves statutory construction. When construing a statute, the "cardinal rule" is "to ascertain and give effect to the legislature's intent." *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 37, 923 N.E.2d 718, 724 (2009). The language of the statute, given its ordinary and plain meaning, provides the best indication of legislative intent. *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 99, 55 N.E.3d 117. Courts, in construing a statute, are to view the statute not in isolation but "as a whole, construing words and phrases in light of other relevant statutory provisions." (Internal quotation marks omitted.) *In re Jian L.*, 2018 IL App (4th) 170387, ¶ 22, 95 N.E.3d 56. "The court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." (Internal quotation marks omitted.) *Id.* The court also presumes the legislature "did not intend to create absurd, inconvenient, or unjust results." (Internal quotation marks omitted.) *Id.* We review matters of statutory construction *de novo*. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16, 25 N.E.3d 570.

¶ 28    In recent years, the Dissolution Act's maintenance provisions have undergone dramatic changes. At the time the parties' marriage was dissolved and the trial court ordered temporary maintenance, the 2012 version of section 504 applied. See 750 ILCS 5/504 (West 2012). Under that version, a court was to consider the factors of section 504(a) to ascertain the amount and length of maintenance. *Id.* § 504(a). There were no statutory guidelines setting a duration or amount. See *id.* As of January 1, 2015, however, the legislature limited that

discretion by adding subsection (b-1), which sets guidelines for a trial court to consider once a maintenance award was deemed appropriate. Pub. Act 98-961, § 5 (eff. Jan. 1, 2015) (amending 750 ILCS 5/504). Under the newer version, the trial court considers section 504 factors only to ascertain whether maintenance is appropriate. See 750 ILCS 504(a) (West 2016). The subsection (b-1) guidelines in section 504 then provide a means to calculate the amount and duration of a maintenance award based on the length of the parties' marriage. *Id.* § 504(b-1). One guideline, for example, mandates "[f]or a marriage of 20 or more years, the court, in its discretion, shall order either permanent maintenance or maintenance for a period equal to the length of the marriage." 750 ILCS 5/504(b-1)(1)(B) (West Supp. 2015).

¶ 29         Mark contends the trial court erroneously applied the subsection (b-1) guidelines in making the award permanent as the 2012 version of the Dissolution Act applies. Mark emphasizes the original judgment was entered in November 2014 and the facts underlying that judgment occurred before November 2014—before the newer version became effective in January 2015. Mark further contends for the court to apply the 2015 statutory formula to the events and decision that occurred in 2014 is, in effect, an attempt by the court to appeal the original judgment award two years after it was entered. In support of his contention this court should apply the earlier version of section 504, Mark cites one case: *In re Marriage of Cole*, 2016 IL App (5th) 150224, 58 N.E.3d 1286. Mark argues *Cole* establishes applying the formula on a petition to review maintenance improperly attaches new legal consequences to events that occurred before the effective date.

¶ 30         In response, Marianne maintains the newer version applies. Marianne emphasizes her petition to extend maintenance was filed in 2016, after the new maintenance guidelines had

taken effect. Marianne argues the Dissolution Act "applies to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of this Act." 750 ILCS 5/801(c) (West 2016). Marianne stresses the evidence supporting her petition was heard in 2017, the evidence closed in 2017, and the decision was rendered in 2017. Marianne maintains *Cole* is distinguishable and argues we should follow *In re Marriage of Carstens*, 2018 IL App (2d) 170183, 101 N.E.3d 181, in which the Second District applied the newer version of section 504 in modification proceedings.

¶ 31          *Cole* involves an initial maintenance award. In *Cole*, the Fifth District concluded the earlier version of section 504 applied to a determination of maintenance as "the marriage, separation, and dissolution hearing all occurred in 2014, before the statute took effect." *Cole*, 2016 IL App (5th) 150224, ¶ 9. The only event occurring after the January 1, 2015, effective date was the trial court's February 2015 dissolution order. *Id.* As part of that dissolution order, the trial court ordered maintenance paid to the wife in the amount of $2088 per month. *Id.* ¶ 4. The husband moved to reconsider, arguing the court should have applied the new maintenance guidelines contained in Public Act 98-961, which became effective on January 1, 2015. Under these guidelines, the maintenance amount would have been $1328.49 per month. *Id.* ¶ 5. The court denied the husband's petition, concluding the amendment was substantive in nature and applied prospectively only. The court ruled the hearing was held and the evidence closed before the new law took effect. *Id.* On appeal, the Fifth District affirmed the trial court's finding the new amendments did not apply retroactively. *Id.* ¶ 7. The *Cole* court reasoned the amendment was silent regarding its temporal reach, requiring consideration of whether the amendment was a procedural change, prescribing methods of enforcing rights, or a substantive change, creating or

- 11 -

defining rights. See *id.* ¶ 8. The *Cole* court agreed with the trial court the amendments were a substantive change that should not be applied retroactively. *Id.*

¶ 32      *Carstens* involves an appeal from modification proceedings. In *Carstens*, the Second District held the new duration guidelines applied to a petition to terminate or reduce maintenance filed after the guideline's effective date, even though the order sought to be modified or terminated was issued before the guideline's effective date. *Carstens*, 2018 IL App (2d) 170183, ¶ 29. After the *Carstens* respondent's employment was terminated, he filed a petition to terminate or reduce maintenance in February 2016. *Id.* ¶ 10. The trial court considered the maintenance award in light of the factors set forth in section 510(a-5) of the Dissolution Act and found a substantial change in circumstances permitted the respondent to seek a modification of his maintenance obligation. *Id.* ¶ 16. The court then turned to the issue of the duration of the maintenance award, rejecting the argument the guidelines that became effective in January 2016 applied. *Id.* ¶ 17.

¶ 33      On appeal, the Second District found the newer version of section 504 applied. *Id.* ¶ 29. The Second District began by looking at the amendments to section 504, observing section 504(b-1) was added as part of Public Act 98-961 (Pub. Act 98-961, § 5 (eff. Jan. 1, 2015) (amending 750 ILCS 5/504)). The court also noted both section 504 and section 510, which applied to petitions for the modification and termination of maintenance, were subsequently amended as part of Public Act 99-90 (Pub. Act 99-90, § 5-15 (eff. Jan. 1, 2016) (amending 750 ILCS 5/504, 510)). *Carstens*, 2018 IL App (2d) 170183, ¶ 29. In that same public act, the legislature also amended section 801 of the Dissolution Act, which dictates the application of the Dissolution Act:

"(a) This Act applies to all proceedings commenced on or after its effective date.

(b) This Act applies to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered. Evidenced adduced after the effective date of this Act shall be in compliance with this Act.

(c) This Act applies to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of this Act." 750 ILCS 5/801 (West 2016).

The Second District concluded because both the petition to terminate or reduce maintenance and the amended petition were filed after the effective date of Public Act 99-90, the petition fell within section 801(c) and the changes effectuated by Public Act 99-90 governed the proceedings. *Carstens*, 2018 IL App (2d) 170183, ¶ 29.

¶ 34 The facts of this case are more similar to those in *Carstens* than *Cole*. In *Cole*, the request for maintenance occurred before the effective date of the amendment, all evidence was submitted before the effective date, and the arguments were heard before that date. *Cole*, 2016 IL App (5th) 150224, ¶ 9. Here, in contrast, the petition to extend maintenance was filed after the effective date of Public Acts 98-961 and 99-90. The evidence adduced at the hearing involved circumstances and occurrences after the effective date of those acts. The hearing occurred after the relevant effective dates. *Cole*'s holding does not bar application of the newer version of section 504 to Marianne's petition to extend maintenance. As in *Carstens*, however, the original

- 13 -

proceeding preceded the amendment. A proceeding to change the maintenance was filed after the amendment. The hearing involved facts occurring after the amendment and evidence adduced after the amendment.

¶ 35    Mark urges this court not to follow the analysis in *Carstens*. Mark distinguishes this case from *Carstens* by emphasizing this case involves review proceedings while *Carstens* concerns modification proceedings. Mark stresses in a petition to modify, one must establish a substantial change or circumstances, while on a petition to review, no such proof is required.

¶ 36    Based on our reading of section 801(c) in the context of the Dissolution Act, we conclude the legislature did not intend section 801(c)'s language "proceedings commenced after its effective date for the modification of a judgment" to mean only "modification proceedings." Section 510(a-5) applies to proceedings to terminate maintenance, modify maintenance, and review maintenance. In all three, the Dissolution Act directs the factors in section 504(a) and section 510(a-5) are to be considered. See 750 ILCS 5/510(a-5) (West 2016). Each of these seek a modification to the original order. The only difference between the types of proceedings is the basis for the trial court's authority to modify the original agreement. In review proceedings, the court provided authority to revisit the order, whereas in termination or modification proceedings, the legislature provides authority so long as there has been a substantial change in circumstances. See *Heasley*, 2014 IL App (2d) 130937, ¶¶ 25-27. We fail to see how this difference prevents the application of section 801(c) to review proceedings.

¶ 37    Our reading of section 801(c) is consistent with the goal of construing a statute in a way to prevent an absurd result. To interpret the term "modification" so narrowly as to mean only "modification proceedings" under section 510(a-5) would mean petitions to terminate

- 14 -

maintenance do not fall within section 801(c). Under the Dissolution Act, petitions to terminate are treated the same as petitions in modification proceedings. Both are mentioned in the same clause of section 510(a-5) and both require proof of a substantial change of circumstances. See 750 ILCS 5/510(a-5) (West 2016). The legislature plainly intends all petitions to modify a maintenance order, including those on a petition to review and on a petition to terminate, fall within section 801(c)'s application.

¶ 38        Following the analysis in *Carstens*, we find section 801(c) requires the version of the Dissolution Act in effect at the time of the filing plaintiff's petition to extend maintenance to apply. That version was the one amended by Public Act 99-90 (Pub. Act 99-90, § 5-15 (eff. Jan. 1, 2016) (amending 750 ILCS 5/504, 510, 801)). The trial court did not err by not applying the earlier version of the Dissolution Act.

¶ 39        In his reply brief, Mark argues the addition of subsection (b-8) (750 ILCS 5/504(b-8) (West 2016)) to section 504, introduced in Public Act 99-763 (Pub. Act 99-763, § 5 (eff. Jan. 1, 2017) (amending 750 ILCS 5/504)), establishes the duration guidelines of section 504(b-1)(1)(B) (750 ILCS 5/504(b-1)(1)(B) (West 2016)) do not apply when a party seeks review of a previously ordered maintenance award. Subsection (b-8) provides the following: "Upon review of any previously ordered maintenance award, the court may extend maintenance for further review, extend maintenance for a fixed non-modifiable term, extend maintenance for an indefinite term, or permanently terminate maintenance in accordance with subdivision (b-1)(1)(A) of this Section." *Id.* § 504(b-8). Mark contends the legislature's decision to exclude a reference to subsection (b-1)(1)(B) indicates the legislature did not intend duration guidelines to apply in review proceedings. Mark concludes the January 2017 version applies because, although

the petition to review was filed in October 2016, evidence was not heard until July 18, 2017.

¶ 40    This argument, however, has twice been forfeited. Issues not raised in the trial court are forfeited and may not be raised on appeal. *In re Ronald J.*, 2017 IL App (4th) 160855, ¶ 22, 74 N.E.3d 1178. Mark failed to present his argument regarding section 504(b-8) at any time before the trial court. Additionally, Illinois Supreme Court Rule 341(h)(7) (eff. Nov. 1, 2017) deems forfeited arguments not raised in the opening brief. Mark did not raise the section 504(b-8) argument until his reply brief, forfeiting this claim on this ground as well. *Id.* ("Points not argued are waived and shall not be raised in the reply brief ***.").

¶ 41    We note at no point on the petition to extend maintenance did the trial court indicate any award other than permanent maintenance was appropriate. The court ordered permanent maintenance, an action authorized by each version of section 504. See 750 ILCS 5/504(b-8) (West Supp. 2017) ("Upon review of any previously ordered maintenance award, the court may *** extend maintenance for an indefinite term ***."); 750 ILCS 5/504(b-1)(1)(B) (West 2016) ("For a marriage of 20 or more years, the court, in its discretion, shall order either permanent maintenance or maintenance for a period equal to the length of the marriage."); 750 ILCS 5/504(a) (West 2012) ("[T]he court may grant a temporary or permanent maintenance award for either spouse ***."). We note the trial court found convincing earlier cases involving lengthy marriages and income disparities that clearly favor either lengthy or permanent maintenance. Under the old statute or the new, a decision to make maintenance permanent in this case could not be an abuse of discretion.

¶ 42         B. The Trial Court Did Not Abuse Its Discretion
         in Finding Marianne Had a Continuing Need for Maintenance

¶ 43    Mark argues the trial court erred by failing to provide specific factual findings as

- 16 -

required by statute and the trial court's order is not supported by the record. Mark disputes the findings that Marianne's "needs remain the same" and "[n]either party's circumstances have changed significantly enough for the court to conclude maintenance is not appropriate especially given the length of the parties' marriage and their incomes and needs at the time of the dissolution." He argues Marianne's circumstances place her in a better position than he is in as she has gone on vacations and donates to her church, whereas he is living at a monthly financial deficit.

¶ 44　　　　An initial task in reviewing the trial court's decision to modify in a review proceeding is to ascertain the scope of the review. See *Golden*, 358 Ill. App. 3d at 468-69. As mentioned above, in time-limited maintenance orders, a court may advise on the issues to be addressed and assign the burden of proof. *Heasley*, 2014 IL App (2d) 130937, ¶¶ 25, 27. In this case, there are no restrictions other than that Marianne must show "a continued need for maintenance."

¶ 45　　　　We reject any inference from Mark's argument that the original order of maintenance is "rehabilitative maintenance," thereby restricting the trial court's review of the original maintenance order. While time-limited maintenance is generally intended to motivate the recipient spouse to take steps necessary to attain self-sufficiency (*id.* ¶ 25 (citing *In re Marriage of Rodriguez*, 359 Ill. App. 3d 307, 312, 834 N.E.2d 71, 75 (2005))), the original maintenance order here was not intended to do so. There is no language in that order requiring Marianne, a woman in her fifties in a long term position earning over $50,000 per year, to "rehabilitate." The adult daughter, who was attending college and incurring costs related to that attendance, would graduate within that two-year period. As evidenced by Mark's petition for

maintenance, Mark's employment was an issue as he had been subject to a layoff. The "agreements reached" docket entry and the letter to the court demonstrating the parties worked together to create a draft order evidence a compromise. See generally *In re Linda B.*, 2017 IL 119392, ¶ 43, 91 N.E.3d 813 (stating "any doubts that may arise from the incompleteness of the record will be resolved against the appellant"). Moreover, the order was entered just weeks before significant changes to the Dissolution Act and the determination of maintenance obligations were to be affected.

¶ 46       This case thus presented to the trial court a situation of general review, in which the court is to consider the factors listed in sections 510(a-5) and 504(a) to determine whether and how to alter maintenance. See *Golden*, 358 Ill. App. 3d at 470-71 (citing 750 ILCS 5/504(a) (West 2002)). Due to the mandate of section 801(c) that the law in effect at the time Marianne's petition was filed, the court was to consider Marianne's petition in light of the Dissolution Act as effective on January 1, 2016, which it did.

¶ 47       Section 510(a-5) directs, in proceedings in which maintenance is reviewed, the trial court shall consider nine enumerated factors, including any additional factor the court found to be just and equitable, as well as the factors set forth in section 504(a). 750 ILCS 5/510(a-5) (West 2016). Section 504(a) directs the trial court to determine whether a maintenance award is appropriate after considering 14 factors. *Id.* § 504(a). Section 504(b-2) mandates "[i]n each case involving the issue of maintenance, the court shall make specific findings of fact" and "state its reasoning for awarding or not awarding maintenance and shall include references to each relevant factor set forth in subsection (a) of this Section." *Id.* §§ 504(b-2)(1). This court will not disturb the decision to award maintenance absent an abuse of the trial court's discretion. See

*In re Marriage of Schneider*, 214 Ill. 2d 152, 162, 824 N.E.2d 177, 183 (2005). "A trial court abuses its discretion only where no reasonable person would take the view adopted by the trial court." *Id.* at 173. The appellant, who seeks reversal, bears the burden of proving an abuse of discretion. *Id.*

¶ 48       Contrary to Mark's argument, the trial court made specific findings of fact, stated its reasoning for extending maintenance, and referenced the factors it deemed relevant. In its ruling, the court listed each factor of section 504(a) and struck each factor it deemed irrelevant, such as the tax consequences on the property division (750 ILCS 5/504(a)(11) (West 2016)) and contributions to the education of the other spouse (*id.* § 504(a)(12)). The court stated it considered the relevant statutory factors. We find no error on this ground. See *Blum v. Koster*, 235 Ill. 2d 21, 38, 919 N.E.2d 333, 343 (2009) (holding "when the basis for an award of maintenance is established in the record, it is not mandatory that the trial court make explicit findings for each of the statutory factors").

¶ 49       Moreover, we find no abuse of discretion in the trial court's decision finding Marianne proved a continuing need for maintenance and awarding permanent maintenance. The court heard evidence regarding the parties' income and expenses, as well as testimony regarding the standard of living enjoyed by the parties during the marriage and after the marriage. The court considered testimony regarding religious donations and voluntary financial contributions by both parties to the adult child. The evidence heard established Marianne earned over $30,000 less per year than Mark during their long-term marriage, and the parties were in their 50s at the time of the dissolution and petition for rehearing.

¶ 50       In arguing the trial court abused its discretion, Mark emphasized the fact

Marianne's $500 monthly donation or tithe to her church was approximately the same amount as the ordered maintenance. Mark maintains this donation evidences Marianne's standard of living is greater than his current standard of living and the standard of living during the marriage because she can afford to tithe to her church. In his reply brief, Mark argues by forcing him to pay maintenance in this amount violates his freedom of religion.

¶ 51 We find this argument unconvincing. The trial court expressly found, on the motion to reconsider, that Marianne made these monthly donations during the marriage. Mark testified he was not aware of the contributions but did not dispute they were made. This is a finding to which we defer, as the trial court sits in a better position to observe witness conduct and demeanor. See *In re Marriage of Walker*, 386 Ill. App. 3d 1034, 1042, 899 N.E.2d 1097, 1104 (2008). This case is not about tithing. It is about income and permanent maintenance. There is no special category for tithing. As the court noted, this is part of "the same pot." Mark chooses to use his income to pay many expenses for his adult daughter. Marianne chooses to donate to her church. The court's findings are not so unreasonable that no reasonable person would take the trial court's view. See *Schneider*, 214 Ill. 2d at 173. As to Mark's freedom-of-religion argument, it is forfeited. He did not raise the argument before the trial court (see *Ronald J.*, 2017 IL App (4th) 160855, ¶ 22) or in his opening brief (Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017)).

¶ 52 We note we find Mark's cited cases factually distinguishable. For example, both *In re Marriage of Cantrell*, 314 Ill. App. 3d 623, 625, 732 N.E.2d 797, 799 (2000), and *In re Marriage of Henzler*, 134 Ill. App. 3d 318, 320, 480 N.E.2d 147, 148 (1985), concerned maintenance orders directing the spouse receiving rehabilitative maintenance to receive further education. Neither are on point here.

¶ 53                    III. CONCLUSION

¶ 54          We affirm.

¶ 55          Affirmed.

¶ 56          JUSTICE TURNER, dissenting:

¶ 57          I respectfully dissent. As the majority notes, the trial court found the following: (1) Marianne tithed $500 per month during the parties' marriage, (2) she continued to do so after the dissolution, (3) her testimony concerning the tithing was unrefuted, and (4) the tithing is " 'the standard of living that existed then and still exists now.' " *Supra* ¶ 18. I take issue with all of those findings by the trial court as well as the majority's suggestion these findings could not have influenced the trial court's resolution of the maintenance question. *Supra* ¶ 51. Moreover, I disagree with the majority's finding Mark forfeited his argument pertaining to section 504(b-8) of the Dissolution Act (750 ILCS 5/504(b-8) (West 2016)). I would, therefore, reverse and remand for further proceedings.

¶ 58          Regarding Marianne's monthly tithing, I first note Marianne's evidence of such tithing is as scant as it is weak. The agreed statement of facts indicates Marianne did not testify on direct examination about *any* tithing, either during her marriage to Mark or following the dissolution of the marriage. Instead, she introduced her July 13, 2017, financial affidavit as Exhibit J-1, in which she lists $500 per month for "Donations (political, religious, charity, etc.)." Marianne also introduced into evidence Form 1040 of her individual 2015 and 2016 tax returns as Exhibits G and H. It is easily gleaned from Marianne's July 2017 financial affidavit that her relatively stable annual payments of mortgage interest, real estate taxes, and state income taxes would have approached, if not exceeded, the standard deduction of $6300 in tax years 2015 and

2016. Thus, she could have fully deducted $6000 in charitable donations if she actually made them, and Marianne offered no explanation why she did not itemize deductions to minimize her federal income taxes.

¶ 59    Here, Marianne had the burden of demonstrating her continued need for maintenance, and Mark was obviously aware Marianne did not testify about tithing in her direct testimony nor did she present cancelled checks or receipts from her church evincing the donations she listed in her financial affidavit. Thus, Mark established during *cross-examination* the joint tax returns of the parties did not reflect any itemized deductions for charitable giving. Mark had no purpose for establishing this fact unless he was disputing Marianne made the $6000 annual donations. Accordingly, I disagree with the trial court's cursory statement at the hearing on the motion to reconsider that Marianne's testimony regarding tithing was unrefuted. Moreover, I would find the trial court's determination Marianne proved she donated $6000 annually to her church during the marriage and after the dissolution was against the manifest weight of the evidence. In my view, the opposite conclusion is clearly apparent. See *In re Marriage of Mayes*, 2018 IL App (4th) 180149, ¶ 59, 109 N.E.3d 942 (noting a trial court's factual determination is against the manifest weight of the evidence when "the opposite conclusion is clearly evident"). I reject the notion Marianne's responses to questions on cross-examination were sufficient to prove she anonymously tithed $6000 annually in cash during the marriage and after the dissolution.

¶ 60    I further note that, even if Marianne had proved she tithed $6000 annually, neither she nor the trial court cited any authority that tithing is a factor to be considered in determining the standard of living established during the marriage for purposes of awarding maintenance. In

fact, the appellate court has affirmed a trial court's finding the wife dissipated the marital assets by tithing to the Mormon Church where the wife had failed to prove by clear and convincing evidence the funds were expended for a family purpose. *In re Marriage of Cerven*, 317 Ill. App. 3d 895, 902, 742 N.E.2d 343, 349 (2000). The reviewing court explained that, for the wife to show the monies she paid to the Mormon Church were for a family purpose, it was necessary for the wife to establish the husband had agreed to her tithing and other contributions. *Id.* Thus, if tithing not approved by the spouse can constitute dissipation, such unapproved tithing should not be considered part of an established standard of living.

¶ 61        Additionally, regarding the standard of living, Marianne admitted under cross-examination "the amount she gives to the church each month is the same amount that she receives in maintenance each month." This seems to suggest Marianne uses the maintenance to tithe—not to maintain her standard of living. Assuming *arguendo* some tithing did occur, it still calls into question the trial court's comment, "it was the standard of living that existed then and still exists now." I also point out that, if Marianne clandestinely tithed $6000 per year on a marital annual gross income of $141,000, it should not justify the conclusion Marianne is now entitled to continue to tithe $6000 per year on her individual annual gross income of $51,000.

¶ 62        As previously noted, it was Marianne's burden to demonstrate which section 504 factors entitled her to continued maintenance, and based on the foregoing, I would find Marianne's reduced ability to tithe did not constitute proof of a diminished standard of living and it was error for the trial court to so conclude. Accordingly, I would remand this case to the trial court to determine if Marianne has met her burden she is entitled to continued maintenance based on factors other than her standard of living and, if so, whether it is appropriate to deviate from

- 23 -

the statutory formula, given that the standard of living factor does not weigh in Marianne's favor.

¶ 63     Finally, I also note my disagreement with the majority's finding Mark forfeited his argument regarding the applicability of section 504(b-8) of the Dissolution Act (750 ILCS 5/504(b-8) (West Supp. 2017)). *Supra* ¶ 40. Mark argued against further maintenance, temporary or permanent, consistently throughout the litigation and on appeal. He has simply cited an existing statute he failed to previously reference to support his position, and I maintain this court is bound by the statute even if Mark cited it for the first time in his reply brief. Moreover, I agree with Mark's position on the legislature's intent (*supra* ¶ 39), and I would allow the trial court to exercise its discretion on the duration of maintenance, if any is awarded, because the duration guidelines under section 504(b-1)(1)(B) of the Dissolution Act (750 ILCS 5/504(b-1)(1)(B) (West Supp. 2017)) do not apply in review proceedings. See *People v. Pinkston*, 2013 IL App (4th) 111147, ¶¶ 14, 20, 989 N.E.2d 298 (noting a trial court commits error when it fails to exercise discretion based on an erroneous belief it does not have discretion and remanding for the limited purpose of allowing the trial court to exercise its discretion on the defendant's discovery request).