2020 IL App (2d) 190989-U
No. 2-19-0989
Order filed October 28, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| MARY LENAHAN | ) | of Kane County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 12-D-352 |
| | ) | |
| RICHARD SIMKO, | ) | Honorable |
| | ) | Christine A. Downs, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Birkett and Justice Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court abused its discretion in extending wife's initial 5-year term of reviewable maintenance to April 2022, when the husband would be 65 years old. Husband had a higher salary than wife, but her assets, including stock, far exceeded his. The extended maintenance would hamper husband's efforts to prepare for retirement; on the other hand, if wife liquidated her poorly-performing stock and invested it wisely, the interest she earned would replace the award of maintenance.

¶ 2    Petitioner, Mary Lenahan, and respondent, Richard Simko, were married in October 1992. In March 2012, Mary filed a petition for dissolution of the marriage. At the time, she was 49 years old and Richard was 54 years old. The circuit court of Kane County entered a judgment dissolving the marriage in April 2013. The judgment incorporated the parties' marital settlement agreement,

which awarded Mary reviewable maintenance in the amount of $3000 per month for a period of 60 months beginning June 1, 2013. On May 18, 2018, Mary filed a petition to review and extend maintenance. Following a hearing, the trial court entered an order extending maintenance, at a reduced amount of $2750, until April 1, 2022. Richard unsuccessfully moved to reconsider the order, and this appeal followed. We reverse.

¶ 3                                    I. BACKGROUND

¶ 4      There was no court reporter present at the hearing on Mary's petition to review and extend maintenance, and the parties have not supplied a bystander's report. However, the record reflects that no testimony was offered at the hearing; only documentary evidence was presented. A financial affidavit executed by Mary established that she held the following assets:

| Asset | Amount |
|---|---|
| Charles Schwab Account | $11,000 |
| Real Estate | $230,000 |
| Stock in the Bloedorn Lumber Company (Inherited from Mary's Mother) | $644,735 |
| Automobile | $4825 |
| 401(k) Retirement Account | $9000 |
| Savings and Checking Accounts | $1630 |

Mary owed $1800 to Capital One. Her financial affidavit indicated that she worked at Chico's and earned wages and commissions of $1566 per month.

¶ 5      Exhibits admitted into evidence at the hearing established that Richard's assets were as follows:

| Asset | Amount |
| --- | --- |
| Vanguard Brokerage Account | $43,319 |
| IRAs | $43,479 |
| 401(k) Retirement Account: | $65,924 |

Richard owed $244,207 in mortgage debt, $92,429 on a home equity line of credit, and student loan debt totaling $51,392. (We note that the record does not establish the value of Richard's home.) In his 2017 tax return, Richard reported $136,180 in income from employment. However, during the hearing on the motion to reconsider, the trial court indicated that Richard was earning a salary of $145,000 a year.

¶ 6    In denying Richard's motion to reconsider, the court found that Richard's salary had increased, that he had health insurance and a health savings account, and that he had "built retirement." The court did not acknowledge that upon Richard's retirement, Mary was entitled to 50% of the marital portion of that retirement. The court further found that Mary was "unable to make enough money for her needs given all the facts and circumstances." The court noted that the extended maintenance term would end "when [Richard] reaches a reasonable retirement age of 65" and that "if he continue[d] to work making at this point $145,000 a year he will not be paying out what he had then which is $36,000 a year and could certainly save more money." The court stressed that the Bloedorn Lumber Company stock that Mary inherited was her "retirement plan" and that "there's no case law that indicates that in order to meet one's needs in their 50's that they are required to tap into their retirement."

¶ 7    Richard appealed from the denial of his motion to reconsider.

¶ 8                                    II. ANALYSIS

¶ 9     Review proceedings differ from proceedings to modify maintenance. Where the trial court has made maintenance reviewable, it is authorized to revisit the initial maintenance determination. *In re Marriage of Kasprzyk*, 2019 IL App (4th) 170838, ¶ 36. In contrast, a court's authority to modify or terminate nonreviewable maintenance depends on the existence of a substantial change in circumstances. *Id.* We will not disturb a maintenance award absent an abuse of discretion, which occurs "only where no reasonable person would take the view adopted by the trial court." *In re Marriage of Brunke*, 2019 IL App (2d) 190201, ¶ 32.

¶ 10    In *Brunke*, we described the principles governing proceedings to review maintenance awards:

"In reviewing a maintenance award, the court considers the factors enumerated in section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504(a) (West 2018)): (1) the income and property of each party, (2) the respective needs of the parties, (3) the present and future earning capacity of the parties, (4) any impairment to the parties' present or future earning capacity resulting from domestic duties or delayed education or employment opportunities due to the marriage, (5) the time necessary for the party seeking maintenance to acquire the necessary education or training, (6) the standard of living during the marriage, (7) the duration of the marriage, (8) the age and physical and emotional condition of the parties, (9) the tax consequences of the property division, (10) the contributions of the party seeking maintenance to the education and career of the other spouse, (11) the valid agreement of the parties, and (12) any other factor that the court expressly finds to be just and equitable.

The court also has to consider the factors enumerated in section 510(a-5) of the Act (750 ILCS 5/510(a-5) (West 2018)): (1) any change in the employment status of either

party and whether the change has been made in good faith, (2) the efforts, if any, made by the maintenance recipient to become self-supporting, (3) any impairment of the present and future earning capacity of either party, (4) the tax consequences of the maintenance payments upon the respective circumstances of the parties, (5) the duration of the maintenance payments relative to the length of the marriage, (6) the property, including retirement benefits, awarded to each party in the divorce, (7) the parties' increase or decrease in income since the divorce, (8) the property acquired and currently owned by each party after the divorce, and (9) any other factor that the court expressly finds to be just and equitable." *Id.* ¶¶ 30-31.

¶ 11 Based on the record developed in the trial court, the most significant factors here are the parties' incomes and their property, each party's present and future earning capacity, the duration of the marriage, and the duration of the maintenance payments relative to the length of the marriage. (We note that the record sheds little or no light on many of the other factors, including, for example, the standard of living during the marriage, the physical and emotional condition of the parties, and the extent to which domestic duties affected either party's earning capacity or educational or employment opportunities.)

¶ 12 The value of Mary's property is considerably greater than the value of Richard's. She holds financial assets worth roughly $666,000. She also owns a home free and clear of any mortgage. Richard holds financial assets worth roughly $158,000, which is less than a quarter of the value of Mary's financial assets. As noted, the record does not show how much Richard's home is worth. However, his home is encumbered by considerable mortgage debt; we cannot presume that Richard has any significant, if any, equity in his home.

¶ 13    On the other hand, Richard was earning a salary of $145,000 a year, while, according to Mary's financial affidavit, her job at Chico's paid $12.35 per hour and she earned $1566 per month including commissions. She also received $700 in dividends per month. Together, those amounts yield an annual income of roughly $27,000.

¶ 14    Notwithstanding the income disparity, Richard cites *In re Marriage of Cantrell*, 314 Ill. App. 3d 623 (2000), for the proposition that, because Mary is employable, has no dependent children, and "received sufficient assets," she should no longer receive maintenance. Richard also relies on *In re Marriage of Andrew*, 258 Ill App. 3d 924 (1993). Mary, in turn, cites *Brunke* for the proposition her substantial assets do not foreclose her from continuing to receive maintenance. None of these cases is entirely on point.

¶ 15    In *Cantrell*, we concluded that the trial court improperly transformed the wife's rehabilitative maintenance into permanent maintenance. In holding that the trial court should have terminated maintenance, we placed importance on the factors that Richard mentions, *i.e.* employability, assets, and freedom from the costs, time, and energy involved in raising children. However, we also stressed that the judgment of dissolution required the husband to pay the wife's expenses for obtaining a bachelor's degree and that she had earned that degree but had made little effort to secure gainful employment or become self-sufficient. As far as the record shows, those circumstances are not present in this case. On the other hand, the wife's property in *Cantrell* was worth less than Mary's property and the husband in *Cantrell* was earning considerably more than Richard.

¶ 16    *Andrew* held that the trial court did not abuse its discretion in denying maintenance to a spouse who had been awarded marital property worth well over a million dollars. Leaving aside the value of a dollar in 1993, when *Andrew* was decided, as opposed to its value now, the court's

holding that the trial court acted within its discretion by denying maintenance does not imply that it would have been an abuse of discretion to award maintenance.

¶ 17    In *Brunke*, we affirmed the trial court's decision to extend reviewable maintenance awarded pursuant to a marital settlement agreement for an initial period of five years. The wife was 62 years old, and the husband 53 years old, when the marriage was dissolved. Near the end of the five-year period, the wife filed a petition to review and extend maintenance. The parties stipulated that the combined value of the husband's bank accounts, IRA, brokerage accounts, and home equity was approximately $1.6 million and that he owned vehicles and an airplane worth a total of $147,515. He earned $362,000 per year. The wife testified that she had $1.2 million in assets in addition to her house, which was awarded to her in the dissolution judgment. The wife's income was minimal. The trial court ordered the husband to continue paying maintenance to the wife until he retired. In affirming, we stressed the parties' "grossly disparate earning potentials." *Brunke*, 2019 IL App (2d) 190201, ¶ 43. The obvious distinction between *Brunke* and this case is that in *Brunke* both parties held substantial assets. Here, as noted, Mary's assets are several times greater than Richard's.

¶ 18    We conclude that consideration of the parties' incomes and their property militates against extending maintenance. The trial court extended maintenance, in the reduced amount of $2750 per month, for a period of 31 months from August 1, 2019, until April 1, 2022, when Richard would be 65 years old. The total of those payments would be $85,250. The trial court concluded that 65 was a reasonable retirement age. However, this continued obligation would likely impact Richard's own effort to continue saving for retirement. Mary has financial assets of roughly $666,000 and should use those assets to assist her in meeting her living expenses. We appreciate Mary's reasonable desire to preserve her nest egg, but Richard is also entitled to continue building

his retirement savings. Accord *In re Marriage of Drury*, 317 Ill. App. 3d 201, 207 (2000) ("A spouse seeking maintenance should not be required to sell assets or impair capital to maintain herself in a manner commensurate with the standard of living established in the marriage *as long as the payor spouse has sufficient assets to meet both his needs and the needs of his former spouse*" (emphasis added)).

¶ 19    Furthermore, when determining whether to award maintenance and in what amount, a court should consider not only the value of spouse's assets, but their potential to produce income. *In re Marriage of Tietz*, 238 Ill. App. 3d 965, 972 (1992). It is therefore incumbent upon a party to use his or her income-producing property wisely before asking the other to pay maintenance. It appears that Mary is not doing that. Her most valuable asset—the Bloedorn Lumber stock—has largely been sitting idle. Mary reports dividend income of only $8400 per year. That amounts to a 1.3 percent rate of return. We have noted that "a court may take judicial notice of the fair earning powers of money or invested capital over a certain time period." *In re Marriage of Ryman*, 172 Ill. App. 3d 599, 612 (1988). There is nothing in the record suggesting that the Bloedorn Lumber stock cannot be used to meet certain needs that Mary presently has. In fact, Mary noted on her financial affidavit that she has already liquidated some of this stock for living expenses. Some manner of investment of this asset, or the proceeds of the investment, could be used to meet her expenses as well as supplement the retirement funds Mary will receive from Richard's retirement accounts.

¶ 20    The remaining factors to be considered are each party's present and future earning capacity, the duration of the marriage, and the duration of the maintenance payments relative to the length of the marriage. There is nothing in the record to indicate that the parties are or will be able to earn more than they are earning now. The marriage was relatively long—almost 20 years when the dissolution petition was filed—compared to the initial 5-year maintenance term. Although that

factor favors extending maintenance, it does not, under all of the circumstances, justify impairing Richard's ability to provide for his own needs in retirement. We therefore conclude that the trial court abused its discretion by extending maintenance.

¶ 21                                III. CONCLUSION

¶ 22    For the foregoing reasons, the judgment of the circuit court of Kane County is reversed.

¶ 23    Reversed.