# Illinois Official Reports

## Appellate Court

---

**In re Marriage of Heasley, 2014 IL App (2d) 130937**

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF DIANA L. HEASLEY, Petitioner-Appellant, and KEVIN L. HEASLEY, Respondent-Appellee. |
| District & No. | Second District<br>Docket No. 2-13-0937 |
| Filed | December 2, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although the trial court's order providing for review of petitioner's maintenance award in 18 months only directed petitioner to remain fully employed and seek promotions and better job opportunities that would increase her income, the trial court abused its discretion at the later review hearing when it exceeded the limited scope of review set forth in the prior order by terminating petitioner's maintenance and faulting her for failing to pursue educational opportunities, especially when there was no suggestion in the trial court's prior order that petitioner seek further schooling or job opportunities outside the bank where she held a full-time job; therefore, the termination of maintenance was vacated and the cause was remanded for a review hearing consistent with the appellate court's construction of the prior order. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 05-D-650; the Hon. Gwyn Gulley, Judge, presiding. |
| Judgment | Vacated and remanded with directions. |

Counsel on Appeal

Joyce O'Neill Austin, of Shriver, O'Neill & Thompson, of Rockford, for appellant.

Stephen M. Langley and George P. Hampilos, both of Hampilos & Langley, Ltd., of Rockford, for appellee.

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1     In this divorce proceeding, petitioner, Diana L. Heasley, appeals the trial court's judgment terminating the obligation of respondent, Kevin L. Heasley, to pay her maintenance. The trial court entered the termination order at the second review of maintenance following the divorce decree. We agree with petitioner that the trial court failed to recognize the limited scope intended for the second review. Accordingly, we vacate the judgment terminating maintenance and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3     The parties were married in 1984 and have one child, Trista, born in March 1994. In May 2005, petitioner filed for dissolution of the marriage. In 2007, the trial court held an evidentiary hearing on contested issues. No transcripts or exhibits from that hearing are in the record, but this does not hamper our review of the issues presented in this appeal.

¶ 4     In December 2007, the court issued its judgment of dissolution. At the time, petitioner and respondent were, respectively, 45 and 44 years of age. The court ordered joint legal custody of Trista but granted petitioner sole physical custody. Respondent was ordered to pay $1,040 per month as child support. Also, he was required to pay maintenance in accord with the following provisions:

> "7. *** [Respondent] is fully employed, earning $91,208 per year and [petitioner] is employed part time earning approximately $12,000 per year. Due to the length of the marriage and other appropriate [s]tatutory factors, the Court finds that maintenance should be awarded from [respondent] to [petitioner] in the amount of $1,050 per month, and the Court further finds that there may be a review of said maintenance after 24 months upon petition by either party. The Court expects [petitioner] to either seek full time employment, or seeking [*sic*] additional schooling. ***
>
>     8. ***
>
>        ***

B. *** [Respondent] is barred from receiving maintenance from [petitioner] forever, but [petitioner] is entitled to receive maintenance from [respondent] in the amount of $1,050 per month. The maintenance shall terminate upon the death of [petitioner], her remarriage, or other appropriate statutory factors. Maintenance is reviewable upon petition by either party on or after 24 months of maintenance payments from [respondent] to [petitioner], and the Court may, upon appropriate proofs, review maintenance after appropriate hearing. "

¶ 5    In December 2009, respondent filed a motion to modify maintenance. He asked that maintenance be terminated or reduced because petitioner had had sufficient time to become financially independent.

¶ 6    Several months later, in June 2010, the motion was heard by the Honorable R. Craig Sahlstrom. Petitioner was the sole witness at the hearing. She testified to her education and employment history. Petitioner graduated from Penn State in 1982 with an associate's degree in architectural engineering. Unable to find immediate work in her field of training, petitioner became a dental assistant. After the parties married, they moved to New Jersey and petitioner became employed full-time with a civil engineering firm, where she did drafting. When Trista was born in 1994, petitioner switched to part-time work with the firm, then later reverted to full-time work. Petitioner's full-time yearly salary at the firm was about $38,000. Three-and-a-half years after Trista was born, petitioner ceased working outside the home. She became a homemaker and operated a home business (there are suggestions in the record that the business involved crafts). Petitioner was still not working outside the home when, in May 2005, she filed for divorce. In June 2005, while the dissolution petition was pending, the trial court directed petitioner to find employment in her field of training. Petitioner subsequently obtained part-time employment, working Mondays and Wednesdays at Lawrence Clayton Associates (LCA) (the record does not disclose the nature of this work, but the parties agree that it was not related to petitioner's field of training). When the dissolution decree was entered in December 2007, petitioner was still working part time with LCA and earning $12,000 per year.

¶ 7    There is no dispute in this appeal that advances in the architectural industry have rendered petitioner's 1982 associate's degree obsolete. Petitioner testified that, when the divorce decree was entered, she lacked the means to seek further education. She filed a motion seeking funds from respondent for her education, but she was "denied" them (we are unsure which pleading petitioner was referring to here). At this point, petitioner made a calculated "judgment" and decided to take a part-time teller position at First National Bank (FNB), working Tuesdays, Thursdays, Fridays, and Saturdays. The position at FNB was in addition to petitioner's part-time position at LCA. When she began at FNB, petitioner's hourly wage was about $8.50 an hour. Between her two jobs, petitioner worked 50 to 55 hours per week. In June 2008, petitioner quit her position at LCA and started full-time at FNB. She was so employed at the time of the June 2010 review hearing. Petitioner worked a "minimum" of 40 hours per week at FNB. Her current rate of pay was $10 per hour, or $17,000 per year–an increase from her salary at the time of the dissolution.

¶ 8    Petitioner recalled testifying at the divorce trial that she had considered seeking a degree in dental hygienistry. Petitioner ultimately did not pursue that degree. She noted that the education and training involved in becoming a dental hygienist would have required her to quit her employment. Based on her research, she determined that her yearly deficit for the

two-year degree would have been roughly $80,000, between tuition, health insurance, and loss of current income. Petitioner's research also disclosed that the unemployment rate in Rockford was nearly 20% and that the dental industry in the area suffered a downturn in the recent poor economy.

¶ 9   Petitioner testified further about her financial state and ability to fund her education. As part of the property division, petitioner was awarded the marital home and the approximately $120,000 in equity that the parties had at the time. The dissolution judgment also made petitioner responsible for the two mortgages on the home. Petitioner had since paid off the second mortgage. She refinanced the primary mortgage, lowering the payment and using the equity to pay taxes on the property. She did not use any of the equity to seek further education. Petitioner estimated that her current equity was $100,000.

¶ 10   Petitioner also received from the property division $125,000 in an individual retirement account (IRA). Withdrawals from the IRA were subject to a 10% penalty and a 17% tax. Petitioner withdrew $4,000 from the IRA to pay bills as well as debts owed to family members. Between the withdrawals and market decreases, the present balance of the IRA was approximately $72,000. Petitioner had not used any money from the IRA to pay for further education. Petitioner claimed that her debts had been "mounting" since the dissolution and that she depended on loans from family members.

¶ 11   Petitioner testified that, based on a recent annual review, she was promoted to "Teller III." She also applied recently for a supervisory position but was passed over for an applicant with more experience. Petitioner was not "content" with her current position and was seeking to advance within FNB by taking as many in-house courses that FNB offers "in computer knowledge or bank knowledge." She had taken courses that did not relate to her current position, in the event that another type of position within FNB will arise. Petitioner acknowledged that she had not taken any classes outside FNB or explored the costs of any courses or degrees aside from a dental hygienistry degree. Petitioner added that she had no intention of looking further into education outside the bank.

¶ 12   The parties stipulated that respondent's current yearly salary was $96,000, an increase from his salary of $91,000 at the time of the dissolution.

¶ 13   After petitioner finished her testimony, the court engaged the parties in a lengthy dialogue as to the proper course regarding maintenance. Counsel for respondent remarked that he wished to call respondent to testify. The court indicated that respondent's testimony likely would make no difference, given the court's present inclination on the issue. Elaborating, the court expressed its belief that petitioner had made a good-faith effort to become financially independent and that respondent's maintenance obligation should not terminate until his retirement, barring a substantial change in circumstances:

> "That you [petitioner] went to the bank, that you're working full-time. Granted, it is an entry-level job, but at least you're there. That you seem to be in a much better place than you were two years ago. You seem to be a person [who] is not going to be satisfied making $18,000 a year. And it's not in your interest to do that, either. Because with the $18,000 and some of the maintenance that I feel is appropriate for [respondent] to pay you, you are not going to be living anywhere near the lifestyle that you lived [while] married. ***

\* \* \*

All things considered, I can't say this is a case where I would sanction you by stating you didn't even try, you get nothing any more. Good luck. You did try, I think. You are where you are and I think you made good faith effort to be where you are and I would hope you advance. And I would hope before 17 years [are] up that you are the branch manager or something ***.

***

*** [Y]ou're in a good place. I think if you got a good evaluation, perhaps, maybe that–I can hope for it. I don't know that I would necessarily expect it. But I think maintenance in the amount that's currently set, it's an appropriate amount. Her income has gone up a little bit, but so has yours. But I'm not going to make it permanent any more. *** I don't think there's any sense coming back in a couple of years, because I don't know what more I can do now than tell you get a job, work 40 hours a week, at the highest level you can. As best I can tell, you're there now. I don't think you're going to be satisfied being there. Even if your maintenance is terminated, it's not high enough for you just to sit back and rest on the [$]18,000 a year. It's always going to be in your best interest to try and make as much money as you can for yourself, even if it may result in your maintenance being terminated[,] because it's not enough for you to live on. And if you have the ability to make more money and be self-sufficient, I would think that you would do that, because the maintenance isn't enough to live on Easy Street. So I don't know that there's anything to come back for me to review in the case. I would say, I guess, that you're both eligible for retirement at age 65. ***

***

*** I would think maintenance should terminate, in this case, at the age of 65, period. And I would think that it should be subject to modification under the terms of Section 510 [of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/510 (West 2012))]. ***

* * *

*** You know, I guess the whole thing is your–the ability to rehabilitate yourself. We have a difficult economy right now. *** You know, [petitioner] did crafts at home. And the CAD [(computer-aided design)] market or the draftsman market moved her by. She does have an associate's degree, but I don't know it's in anything that, you know, when you're out of school for a period of time, the fact that you went to college–you don't remember anything that you learned anyway other than you have the degree.

***

*** You probably know a lot more now about banking rules and regulations. I think there's enough of a safety net and she has enough incentive to try and become self-supporting. Retirement seems a logical cutoff date of 62, and I would hope that it would end before then."

¶ 14   Based on the court's remarks, respondent asked for a continuance to decide whether to present evidence on the issue. The court continued the matter to June 23, 2010, for a pretrial conference.

¶ 15 The record contains no report of any further proceedings on the motion. (The next hearing for which there is a report of proceedings occurred in June 2012.) On November 18, 2010, the trial court entered a written order disposing of the motion. The trial court denied the motion, stating: "The Court directs [petitioner] to remain fully employed and to seek out promotions and better job opportunities so as to increase her income." The court continued the matter to June 2012 for review of maintenance, at which time the court would "increase, decrease or leave the same amount."

¶ 16 The matter was subsequently transferred to the Honorable Gwyn Gulley. In May 2012, respondent filed a motion to modify maintenance. Petitioner, for her part, filed a motion to increase maintenance. On September 7, 2012, the court entered an order terminating child support, as Trista had graduated from high school.

¶ 17 The motions regarding maintenance were heard on September 17, 2012. The parties represented to the court that they had agreed to an "expedited" hearing and would stand on the evidence presented at the June 2010 review as well as their recent financial affidavits. The parties did, however, make representations about events since the June 2010 review. The court appeared to regard these as stipulated facts for purposes of its decision, and the parties assume their truth for purposes of this appeal. Those facts were as follows. Petitioner's current salary was $21,000 and respondent's was $120,000–both having increased since the June 2010 review. Petitioner was still employed as a bank teller at FNB, and her salary in that position would "top[ ] out somewhere" around $22,000 to $23,000. Since the June 2010 review, petitioner had taken no classes outside FNB. She had, however, continued to take in-house classes at FNB, including all the "word processing, all the accounting classes." Petitioner was also participating in a three-year "training program" with the goal of becoming "more of a bank administrator," such as a personal banker or branch manager. Petitioner was being "as active and as involved as [she] possibly [could] for any promotion that [would come] [her] way."

¶ 18 Three months later, on December 13, 2012, the trial court issued a written order providing that petitioner's maintenance would terminate in 18 months. The court recognized that, in a maintenance review proceeding, "there is no threshold requirement of *** a substantial change in circumstances." See *In re Marriage of Golden*, 358 Ill. App. 3d 464, 471-72 (2005) (in a maintenance review, there is no requirement of a change in circumstances). The court made the following findings in support of the termination of maintenance:

"6. *** Petitioner is now working, but the Court is not convinced that there was a good faith effort to become self supporting. The Court finds that Petitioner was unemployed and worked part time and failed to take college courses/training to improve her earning capacity from 2005 to 2012. The Court acknowledges that [petitioner] eventually became employed full-time from 2009-2012.

7. Petitioner is currently employed and is in training and has future potential for increased earnings as she has had an affirmative duty to seek to become financially independent.

8. Petitioner['s] needs are now less since she no longer has a minor child in the household.

9. Petitioner has financial business ability and had an opportunity to re-enroll in college and chose not to.

- 6 -

10. *** Petitioner has capacity for employment/financial business, and no minor children. She had the opportunity to re-enroll in school for additional training and did not do so."

The court also ordered that respondent contribute to Trista's college costs.

¶ 19      Petitioner filed a motion to reconsider the termination of maintenance. The trial court denied the motion, and petitioner filed this appeal.

¶ 20                         II. ANALYSIS

¶ 21      On appeal, petitioner advances several challenges to the termination of maintenance. One of her contentions is that, in conducting the maintenance review in September 2012, the trial court misunderstood the intended scope of that review. We agree. As this issue disposes of this appeal, we need not address petitioner's remaining contentions.

¶ 22      Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504(a) (West 2012)) provides that the trial court "may grant a temporary or permanent maintenance award for either spouse in amounts and for periods of time as the court deems just *** in gross or for fixed or indefinite periods of time." Section 504(a) sets forth several factors for the court's consideration in granting a maintenance award. See *id.*

¶ 23      In the December 2007 dissolution judgment, petitioner was awarded rehabilitative maintenance. "Rehabilitative maintenance is appropriate if evidence shows a potential for future employability at an income that allows approximately the same standard of living established during the marriage." *In re Marriage of Brackett*, 309 Ill. App. 3d 329, 340 (1999). "Inherent in the concept of rehabilitative maintenance is the optimal goal that after a period of renewing or developing skills, or reentering the job market, the dependent former spouse will be able to become self-sufficient through his or her own income." *In re Marriage of Lenkner*, 241 Ill. App. 3d 15, 20 (1993).

¶ 24      Concerning modification and termination of maintenance, section 510(a-5) of the Act (750 ILCS 5/510(a-5) (West 2012)) states:

"(a-5) An order for maintenance may be modified or terminated only upon a showing of a substantial change in circumstances. In all such proceedings, as well as in proceedings in which maintenance is being reviewed, the court shall consider the applicable factors set forth in subsection (a) of Section 504 and the following factors:

(1) any change in the employment status of either party and whether the change has been made in good faith;

(2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of the efforts where they are appropriate;

(3) any impairment of the present and future earning capacity of either party;

(4) the tax consequences of the maintenance payments upon the respective economic circumstances of the parties;

(5) the duration of the maintenance payments previously paid (and remaining to be paid) relative to the length of the marriage;

(6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage, judgment of legal separation, or

judgment of declaration of invalidity of marriage and the present status of the property;

(7) the increase or decrease in each party's income since the prior judgment or order from which a review, modification, or termination is being sought;

(8) the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage; and

(9) any other factor that the court expressly finds to be just and equitable."

¶ 25    Courts have construed section 510(a-5) as distinguishing between review proceedings and modification proceedings. See *Blum v. Koster*, 235 Ill. 2d 21, 35-36 (2009); *Golden*, 358 Ill. App. 3d at 469 ("[R]eview proceedings and modification proceedings are separate and distinct mechanisms by which reconsideration of maintenance can occur."). A review proceeding occurs as a result of a prior court order for reconsideration of maintenance:

"The power of the court *** includes the authority to award time-limited maintenance with a provision for review. [Citation.] The purpose of a time limit on the award is generally intended to motivate the recipient spouse to take the steps necessary to attain self-sufficiency. [Citation.] At the end of the specified time period, the court determines whether the maintenance award should be extended. [Citation.]" *In re Marriage of Rodriguez*, 359 Ill. App. 3d 307, 312 (2005).

¶ 26    Where there is no such provision for review, a motion to reconsider maintenance initiates a modification proceeding rather than a review proceeding. See *Golden*, 358 Ill. App. 3d at 469 ("Review proceedings *** are held pursuant to prior court orders while modification proceedings can be initiated by the parties without prior order of the court."). As section 510(a-5) provides, maintenance will not be altered in a modification proceeding absent proof by the movant of a substantial change in circumstances. This threshold of proof is not required, however, in review proceedings. *Blum*, 235 Ill. 2d at 35-36; *Golden*, 358 Ill. App. 3d at 471-72.

¶ 27    Review proceedings can be general or limited. See *Blum*, 235 Ill. 2d at 32; *Golden*, 358 Ill. App. 3d at 470 ("Review proceedings regarding maintenance can encompass various issues."). A general review of maintenance will involve consideration of all factors in section 510(a-5). See *Blum*, 235 Ill. 2d at 31-32. Limited review involving fewer statutory factors is possible. See *id.* at 32 ("The factors set forth in section 510(a-5) are inapplicable when the parties have otherwise agreed on the terms of modification and termination of maintenance in a written marital settlement agreement approved by the court, pursuant to section 502 [of the Act (750 ILCS 5/502 (West 2012))]); *Golden*, 358 Ill. App. 3d at 470 ("[T]he trial court can define the scope of the review, including limiting the review to certain issues."). A trial court that orders a review proceeding is encouraged to notify the parties of any limitations the court intends to set on that review:

"When trial courts set review hearings, it would be preferable for the court to advise the parties who has the burden of going forward, who has the burden of proof, and what issues will be addressed. For example, if time-limited maintenance–whether temporary or rehabilitative–will continue only if the recipient shows good faith in seeking education or employment or proves the need for continued maintenance, then the parties should be so advised. Neither party should be required to guess what the

- 8 -

court will consider at the review hearing." (Emphasis omitted.) *In re Marriage of Culp*, 341 Ill. App. 3d 390, 396-97 (2003).

A common consideration for review of maintenance is the spouse's efforts toward financial independence:

"Many Illinois courts *** reserve[ ] jurisdiction to encourage a spouse to become self-sufficient while providing the court with an opportunity to review the award at the end of a fixed period to determine what efforts the spouse has made toward achieving this objective and whether those efforts have been successful." *In re Marriage of Pearson*, 236 Ill. App. 3d 337, 348 (1992).

¶ 28    The September 17, 2012, reconsideration of maintenance was a review proceeding, not a modification proceeding, because it was done pursuant to direction in the November 18, 2010, order following the first review of maintenance. We consider how, if at all, the court intended to limit the scope of the second review. "Generally, the intention of the court is determined by the language in the order entered, but where the language of the order is ambiguous, it is subject to construction." *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 512 (2001). An ambiguous order "should be interpreted in the context of the record and the situation that existed at the time of [its] rendition." *Id.* The relevant sources include "pleadings, motions and issues before the court; the transcript of proceedings before the court; and arguments of counsel." *In re Marriage of Lehr*, 317 Ill. App. 3d 853, 858 (2000).

¶ 29    The trial court's November 18, 2010, order provided for review of maintenance in 18 months. The court gave only the following guidance as to what would be its concern at the next review: "The Court directs [petitioner] to remain fully employed and to seek out promotions and better job opportunities so as to increase her income." Petitioner could reasonably interpret this as the sole criterion by which the trial court, at the next review, would judge her efforts toward self-sufficiency. Respondent, we note, never appealed that order.

¶ 30    At the September 2012 review, the trial court specifically faulted petitioner for failing to pursue educational opportunities "from 2005 to 2012[, *i.e.*, to the date of the second review]." Construing the November 18 order, we see no requirement that petitioner seek further education. Obviously, petitioner could, and did, "remain fully employed" without going back to school. Moreover, there was no question at the September 2012 review that petitioner had sought "promotions" within FNB. As for "better job opportunities," this ambiguous phrase is clarified by the trial court's remarks at the June 2010 review. The court found that petitioner had made good-faith efforts by obtaining and continuing full-time employment with FNB and seeking promotions. The court "hope[d]" that petitioner would advance at FNB and become "branch manager or something." We see no suggestion in these remarks that the court expected petitioner to seek further schooling or job opportunities outside of FNB.

¶ 31    The decision to modify or terminate maintenance is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *In re Marriage of McLauchlan*, 2012 IL App (1st) 102114, ¶ 19. The trial court abuses its discretion when, *inter alia*, it applies an improper legal standard. *Rockford Police Benevolent & Protective Ass'n v. Morrissey*, 398 Ill. App. 3d 145, 154 (2010). Here, the court failed to recognize the limited scope of review authorized in the November 18, 2010, order.

¶ 32　　　　Accordingly, we vacate the trial court's judgment terminating maintenance and remand this matter for the court to conduct a review of maintenance consistent with the November 18, 2010, order as we have construed it.

¶ 33　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 34　　　　For the foregoing reasons, the judgment of the circuit court of Winnebago County is vacated and the cause is remanded for further proceedings consistent with this opinion.

¶ 35　　　　Vacated and remanded with directions.