2022 IL App (2d) 200704-U
No. 2-20-0704
Order filed August 26, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF ELLEN MICHELI, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Petitioner-Appellant, | ) ) | |
| and | ) ) | No. 9-D-1256 |
| JOHN MICHELI, | ) ) ) | Honorable Raymond David Collins, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Presiding Justice Bridges and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court erred in characterizing petitioner-appellant's initial maintenance award as rehabilitative and by failing to explicitly consider all relevant statutory factors in her petition for review. Accordingly, we reverse the trial court's denial of the petition for review and remand to the trial court to conduct a general review. Further, because post-dissolution amendments to the IMDMA do not apply to review proceedings, the statutory maintenance guideline formula cannot be applied. Reversed and remanded.

¶ 2    On June 28, 2012, the trial court entered a judgment for dissolution of marriage, ending the

21-year marriage between Ellen Micheli and John Micheli. At that time, the parties were each 48

years old and had two children, one of whom was a minor. Pursuant to the judgment, John was

ordered to pay Ellen $3700 per month in maintenance for a period of seven years, plus 20% of John's future bonuses. On appeal, this court affirmed the duration of maintenance but held that the trial court's failure to place a cap on John's bonus payments was an abuse of discretion. *In re Marriage of Micheli*, 2014 IL App (2d) 121245, ¶ 1 (*Micheli I*). We also held that the trial court abused its discretion in awarding John all of his unvested stock options and restricted stock units (RSUs); affirmed the trial court's order requiring John to contribute $10,000 to Ellen's attorney fees; directed the court to address whether its reduction of that amount to $5000 after giving John credit was error; and declined to address Ellen's argument that a diamond awarded to John as nonmarital property had been given to Ellen as a gift. *Id.* ¶¶ 2-4.

¶ 3       While the appeal was pending, Ellen obtained an order in the trial court requiring John to pay Ellen $17,500 toward her appellate attorney fees and costs. This court affirmed the award. *In re Marriage of Micheli*, 2015 IL App (2d) 140437-U, ¶¶ 2-3 (*Micheli II*).

¶ 4       On remand, the trial court reinstated the maintenance award, but placed a cap on John's bonus payments. It also found that the unvested stock options and RSUs were marital property, dividing those assets equally. We affirmed both judgments. *In re Marriage of Micheli*, 2017 IL App (2d) 150984-U, ¶ 6 (*Micheli III*).

¶ 5       In 2019, Ellen filed a petition for review of the maintenance award, seeking an extension of maintenance in accordance with the statutory guidelines enacted subsequent to the dissolution judgment under the Illinois Marriage and Dissolution of Marriage Act (IMDMA). See 750 ILCS 5/504(b-1)(1)(A) (West Supp. 2019). The trial court ordered John to continue paying temporary maintenance of $3700 per month consistent with the initial award pending the outcome of the review proceedings. Following a hearing, the court denied Ellen's request to extend maintenance on review, and it terminated maintenance *instanter*. For the reasons that follow, we reverse the

trial court's denial of Ellen's petition for extension of maintenance and remand to the trial court to proceed in accordance with this order.

¶ 6                                    I. BACKGROUND

¶ 7                        A. Judgment for Dissolution of Marriage

¶ 8     Judge David P. Brodsky presided over the initial dissolution proceedings. The trial court entered its judgment for dissolution of marriage on June 28, 2012. The court found that maintenance was appropriate and ordered John to pay Ellen "$3,700 per month for a period of Seven (7) years, plus 20% of any gross bonus received by [John] during this maintenance period (after deducting child support)[.]" The order did not specify whether the maintenance was rehabilitative nor was the award accompanied by any future conditions The court did note that Ellen suffered impairment of her present and future earning capacity, but it also noted that "[Ellen] is in good health, and consistent with the duty of each spouse to try to contribute to their own support, [Ellen] has already made some efforts to rehabilitate herself financially."

¶ 9     No transcripts from the initial dissolution proceedings were included in the record for this appeal. However, Judge Brodsky's order acknowledged that Ellen testified that she worked as an administrator in an educational setting, and in a 2011 financial affidavit, Ellen indicated that she worked at Adlai Stevenson High School (Stevenson).

¶ 10    The court issued a subsequent order on October 9, 2012, clarifying the dissolution judgment: "[T]he amount and duration of maintenance as set forth in the Judgment of Dissolution of Marriage shall stand. Maintenance *shall be reviewable* upon the Petition of Ellen Micheli so long as it is timely filed prior to ***June 30, 2019 if there is no delinquency at that time." (Emphasis added.)

¶ 11                                B. The First Appeal

¶ 12    John appealed the judgment, challenging the amount and duration of maintenance. Ellen cross-appealed, arguing only that maintenance should have been made permanent. This court affirmed the duration of maintenance. *Micheli I*, 2014 IL App (2d) 121245, ¶ 30. We further ordered: "On remand, the trial court should recalculate the monthly maintenance amount or at least cap the amount from John's future bonuses. If the trial court determines that $3,700 per month is inadequate to meet Ellen's needs and maintain her standard of living during the marriage, it may add a capped portion of John's future bonuses." *Id.* ¶ 25.

¶ 13                          C. Remand Proceedings

¶ 14    Judge Charles D. Johnson presided over the proceedings on remand. Commenting on Judge Brodsky's finding that $3700 per month base maintenance was sufficient, Judge Johnson opined:

"I don't believe that I would be misguided or that I would be failing to follow the appellate court's directive to say I adopt Judge Brodsky's findings as the findings of the Court at this time as to the sufficiency of the $3700 a month base maintenance, and simply order that there shall be a cap on the bonus amount paid because that was the legal, not factual, error that the Court points out in Judge Brodsky's determination.

So stated a different way, [the appellate court] didn't find any problem with Judge Brodsky's factual determination of the sufficiency of the $3700, and inasmuch as I am viewing the maintenance situation in the light as it existed at the time of the entry of the Judgment, I should, therefore, adopt his factual findings because they would not have changed and only correct the legal error that he has alleged to have made in not capping the bonus maintenance."

¶ 15    Judge Johnson ultimately ordered that John's obligation to pay Ellen 20% of any gross bonus be subject to an income cap of $320,000, predicated on John having a base salary of

$274,260. Thus, the payment of maintenance out of John's bonus was capped at $9148 per year. Under the collective terms of the trial court's orders, John was ordered to pay Ellen as much as $53,548 per year (approximately $4462 per month) to be reviewed in seven years upon Ellen's timely motion. See *Micheli III*, 2017 IL App (2d) 150984-U, ¶ 16.

¶ 16                                    D. The Second Appeal

¶ 17    Both parties appealed again. Relevant here, Ellen argued that the trial court misapplied this court's mandate in *Micheli I* and failed to properly recalculate maintenance based on her reasonable needs rather than John's total income. See *id.* ¶ 28. We affirmed, stating: "The capped maintenance that was ordered on remand is consistent with setting an amount that reflects Ellen's lifestyle during the marriage." *Id.* ¶ 34.

¶ 18                            E. The Petition for Review of Maintenance

¶ 19    Ellen filed her petition for review and extension of maintenance on May 30, 2019, seeking an award in accordance with the statutory guidelines in both amount and duration. See 750 ILCS 5/504(b-1)(1)(A) (West 2018). Specifically, Ellen requested an award of $4932 per month. A two-day hearing was held on January 28 and August 20, 2020.[1]

¶ 20                            1. *The Maintenance Extension Hearing*

¶ 21    Both parties testified at the hearing and various exhibits were admitted into evidence. The most relevant exhibits included (1) John's 2019 financial affidavit, (2) Ellen's 2011 financial affidavit, and (3) Ellen's 2020 financial affidavit. In relevant part, the parties testified as follows.

¶ 22                                        i. John

¶ 23    At the time of the hearing, John was 55 years old. The parties' two children were both then adults. John had remarried and moved into a new marital home. His current wife had two children,

---

[1] The delay occurred as a result of court closures due to the ongoing Covid-19 pandemic.

one of whom was still a minor, and both children moved into the couple's marital home. He was a senior vice president of claims at Allstate Insurance Company (Allstate). His income in 2019 included a base salary of $320,000, a 2018 bonus that brought his income up to $640,000, a company 401(k) contribution match, dividends, and a $452 car allowance with every paycheck. Further, since the dissolution judgment, John had received additional compensation in the form of company stock. John's 2019 financial affidavit reflected that he owned assets valued in excess of $2.5 million and had a vested interest in a pension valued at approximately $7000 per month.

¶ 24                                    ii. Ellen

¶ 25    At the time of the hearing, Ellen was 56 years old. Early in the marriage, Ellen and John held similar positions with Allstate. In 1997, they relocated due to John's position being transferred to Chicago. The parties agreed that Ellen would thereafter stay home to raise the children.

¶ 26    Ellen later reentered the workforce. In 2009, prior to the dissolution proceedings, Ellen was working at Stevenson as a part-time office assistant. Her pay in 2009 was $9500. "Right before the dissolution became effective," Ellen was offered a full-time position as a manager in the student services department. Her gross pay increased to $45,000.

¶ 27    Ellen went back to school and obtained a paralegal certification. After leaving Stevenson, she joined CDW Corporation in 2016 as a full-time legal administrative assistant. She was subsequently promoted twice. At the time of the hearing, she was a proposal specialist with CDW. From 2016 through 2018, she also worked part-time as a food server at The Claim Company. Her total employment income in 2017 was $77,903 and in 2018 was "around" $77,000. In September 2018, she closed on a condominium with a purchase price of $647,500.

¶ 28    Over the previous seven years, Ellen paid taxes for the maintenance payments she received from John. She would "have to dip into [her] savings or assets" because she did not always have

sufficient cash on hand to pay the taxes. To maintain her current living expenses, Ellen would have to liquidate her assets to supplement her employment income unless maintenance payments were extended.

¶ 29    Ellen had two benign tumors on her brain that caused a variety of symptoms, including brain fog, visual changes, daytime sleepiness, headaches, dizziness, insomnia, and elevated blood pressure. To manage her symptoms, she took some time off, worked fewer hours, and sometimes worked from home. Her income did not change due to these measures. At one point, however, she took a medical leave of absence from work of approximately three months, during which time her symptoms gradually improved and she "felt much better." Her income temporarily decreased during this time, but she eventually returned to working full-time. Nevertheless, since returning to work, her symptoms began to worsen again.

¶ 30    On cross-examination, Ellen acknowledged that she was working from home fully at the time of the review hearing. At the time of the dissolution trial in 2012, she had represented to the court that her monthly gross income was $1263.27. Her 2020 financial affidavit reflected that she owned a general investment account valued at approximately $500,000; an individual retirement account (IRA) and a health savings account (HSA) together valued at approximately $600,000; and cash and other assets valued at approximately $100,000. Ellen's retirement assets also included interests in three different pensions which she would be able to access by age 65. Her cumulative pension benefits would exceed $6600 per month. Her financial affidavit further suggested that she has significant equity in her current residence.

¶ 31                                    2. *The Trial Court's Ruling*

¶ 32    The trial court issued its oral ruling on November 19, 2020, followed by a final written order entered on December 8, 2020. The trial court found as follows:

"Judge Brodsky ruled that it was rehabilitative maintenance. This went up to the Appellate Court, who opined that it was temporary or rehabilitative maintenance.

And Judge Johnson ruled that, which also went up to the Appellate Court and was affirmed, about $93,000 in income that would make her independent.

What are the efforts in rehabilitation that have been made by the Petitioner? She received her court reporter certification. She testified that she has a job at CDW and she's been promoted, and she testified on direct that she was a rising star. She's mitigated—she's done a lot to mitigate her need for the maintenance.

She received about 1.335 million in deferred compensation at the divorce. The last check, her earned and passive income was between 80 and $100,000.

There was a question about her health, but there was never any evidence that she could not work, except for the time that she took off.

While the testimony supports that she has done a lot to rehabilitate herself, she's worked years outside the home, she's completed the rehabilitation education. As she said, she's a rising star at CDW. She received technical training for advancement in her career.

And the Court is going to rule that there's no longer a need for financial support to enjoy the standard of living enjoyed during the marriage. And that is based on, honestly, her efforts to rehabilitate herself to no longer be dependent on Mister for support to live in the same standard of living as she had when she was married.

The Court is going to find that she's been fully rehabilitated and gained full and complete financial independence from Respondent, Mr. Micheli.

Therefore, maintenance is going to be terminated *instanter*."

¶ 33    Ellen timely appealed.

¶ 34                                    II. ANALYSIS

¶ 35    Ellen raises three claims of error on appeal. First, she argues that the trial court applied the incorrect standard in reviewing her petition for extension of maintenance, erroneously finding that Judge Brodsky initially granted Ellen rehabilitative maintenance. Second, Ellen contends that the court erred in finding that she was fully rehabilitated and financially independent. Third, Ellen claims that under the proper analysis of her petition, denying her request for an extension of maintenance would have been an abuse of discretion.

¶ 36              A. Ellen's Petition Was Subject to a General Review

¶ 37    Ellen first argues that the trial court erred in finding that the judgment for dissolution of marriage awarded rehabilitative maintenance subject to a limited review. "A trial court's construction of a prior order presents a question of law, which we review *de novo*." *Diocese of Quincy v. Episcopal Church*, 2016 IL App (4th) 150193, ¶ 27. Applying an improper legal standard to maintenance review is an abuse of discretion. *In re Marriage of Heasley*, 2014 IL App (2d) 130937, ¶ 31.

¶ 38    John contends that the judgment awarded rehabilitative maintenance, claiming that "[b]y rejecting John's arguments as to duration in the initial appeal and upholding the 7-year award of rehabilitation, this court of review implicitly limited the trial court's discretion to award additional maintenance to Ellen upon her request for an extension." But John fails to support this contention with any reasoned analysis or appropriate citation. We agree with Ellen.

¶ 39    At the time of dissolution, section 504 of the IMDMA provided, "In a proceeding for dissolution of marriage ***, the court may grant a temporary or permanent maintenance award for either spouse in amounts and for periods of time as the court deems just, without regard to marital misconduct, in gross or for fixed or indefinite periods of time, and the maintenance may be paid

from the income or property of the other spouse after consideration of all relevant factors[.]" 750 ILCS 5/504(a) (West 2012). Under Illinois law, all maintenance awards are reviewable. *In re Marriage of Kasprzyk*, 2019 IL App (4th) 170838, ¶ 23. A review proceeding is available when the original maintenance order specifically provides for review. *Id.* In contrast, where the court order of maintenance does not specifically provide for review, a party must seek review through modification proceedings. *Id.* The parties here do not dispute that the award was reviewable; rather, they disagree as to the appropriate scope of review.

¶ 40    Ellen asks for "general review" of maintenance. A review of a maintenance award can be either general or limited. *Heasley*, 2014 IL App (2d) 130937, ¶ 27. A limited review takes place when the trial court, or the parties by agreement, place limitations on the availability of maintenance at a future point. See *id.* "A common consideration for review of maintenance is the spouse's efforts toward financial independence[.]" *Id.* In such a circumstance, the maintenance award is rehabilitative, with an award of further maintenance upon review contingent on the recipient spouse demonstrating satisfactory efforts towards self-sufficiency. See *id.* But "[n]either party should be required to guess what the court will consider at the review hearing." *In re Marriage of Culp*, 341 Ill. App. 3d 390, 396-97 (2003). Instead, the trial court should advise the parties of any conditions that limit future review. See *Heasley*, 2014 IL App (2d) 130937, ¶ 27 (concluding that dissolution judgment did not require petitioner to seek further schooling or job opportunities outside of her present employer where judgment merely provided, "The Court directs [petitioner] to remain fully employed and to seek out promotions and better job opportunities so as to increase her income.").

¶ 41    In contrast, a general review requires a trial court to consider all enumerated factors under sections 504(a) and 510(a-5) of the IMDMA. *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009) (citing with

approval *In re Marriage of Golden*, 358 Ill. App. 3d 464, 471 (2005)). A general review may be appropriate even where maintenance is intended to be rehabilitative and the trial court's order obligates the recipient to make reasonable efforts to become self-supporting. *See id.* at 35-36. "[W]hen the basis for an award of maintenance is established in the record, it is not mandatory that the trial court make explicit findings for each of the statutory factors." *Id.* at 38; see also *In re Marriage of Connors*, 303 Ill. App. 3d 219, 230 (1999) (the record must be "*adequate* to provide a basis upon which to review the propriety of the decision" (emphasis added)). A trial court has discretion to terminate maintenance, modify maintenance, continue maintenance without modification, or to change the terms of maintenance payment. *Blum*, 235 Ill. 2d at 36.

¶ 42    Here, the dissolution judgment contains no limitations on future maintenance review, aside from providing a deadline by which Ellen was required to seek review, and there is no prior agreement by the parties delineating the scope of review. Although the judgment referenced Ellen's rehabilitative potential, it did not explicitly condition maintenance review on Ellen's efforts toward rehabilitation. See *Heasley*, 2014 IL App (2d) 130937, ¶ 27; *Culp*, 341 Ill. App. 3d at 396-97. Thus, the instant trial court erred in characterizing the maintenance award as rehabilitative and interpreting it as requiring Ellen to demonstrate satisfactory efforts toward self-sufficiency as a prerequisite to receiving an extension of maintenance. See *Heasley*, 2014 IL App (2d) 130937, ¶ 27.

¶ 43    This conclusion is consistent with our judgment in *Micheli I*, in which we affirmed the trial court's durational award. We explained that, in denying a permanent maintenance award as requested by Ellen, the trial court implicitly determined that Ellen had not shown that she was unemployable at a level commensurate to the standard of living established during the marriage. *Micheli I*, 2014 IL App (2d) 121245, ¶¶ 28-30 ("Maintenance generally is intended to be

rehabilitative to allow a dependent spouse to become financially independent, but permanent maintenance is appropriate where a spouse is unemployable or employable only at an income substantially lower than the previous standard of living. ***. [T]he court's decision to forgo permanent maintenance likewise was not an abuse of discretion. ***. By denying permanent maintenance, the trial court implicitly determined that Ellen had not shown that, after seven years, she would be employable only at an income substantially lower than the previous standard of living."). Our holding did not characterize the maintenance award as rehabilitative. Rather, we simply approved the trial court's reasoning for declining to order permanent maintenance. Nothing in the IMDMA provides that a maintenance award must be either rehabilitative or permanent. John offers no authority that prohibits a trial court from ordering a definite-term maintenance award subject to a general review.

¶ 44    The trial court's incorrect characterization of the initial maintenance award is all the more problematic in that the court did not discuss John's circumstances as they relate to the statutory factors.

¶ 45    Section 504(a) of the IMDMA provides several factors the court must consider in conducting a general review of maintenance. We look to those factors in effect at the time the petition for review was filed. See *Blum*, 235 Ill. 2d at 36 (holding trial court was required to consider section 510(a-5) factors, effective January 1, 2004, where initial maintenance judgment was entered in 2003 and petition for review was filed in 2005). Section 504(a) provides:

> "In a proceeding for dissolution of marriage, *** the court may grant a temporary or permanent maintenance award for either spouse in amounts and for periods of time as the court deems just, *** in gross or for fixed or indefinite periods of time, and the maintenance

may be paid from the income or property of the other spouse after consideration of all relevant factors, including:

(1) *the income and property of each party*, including marital property apportioned and non-marital property assigned to the party seeking maintenance as well as all financial obligations imposed on the parties as a result of the dissolution of marriage;

(2) the needs of each party;

(3) *the realistic present and future earning capacity of each party*;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage;

(5) any impairment of the realistic present or future earning capacity of the party against whom maintenance is sought;

(6) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment;

(6.1) the effect of any parental responsibility arrangements and its effect on a party's ability to seek or maintain employment;

(7) the standard of living established during the marriage;

(8) the duration of the marriage;

(9) *the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and the needs of each of the parties*;

(10) all sources of public and private income including, without limitation, disability and retirement income;

(11) the tax consequences to each party;

(12) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(13) any valid agreement of the parties; and

(14) any other factor that the court expressly finds to be just and equitable."

(Emphases added.) 750 ILCS 5/504(a) (West Supp. 2019).

Further, "in proceedings in which maintenance is being reviewed, the court shall consider" the factors set forth in section 510(a-5) of the IMDMA:

"(1) any change in the employment status of either party and whether the change has been made in good faith;

(2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of the efforts where they are appropriate;

(3) any impairment of the present and future earning capacity of either party;

(4) the tax consequences of the maintenance payments upon the respective economic circumstances of the parties;

(5) *the duration of the maintenance payments previously paid (and remaining to be paid) relative to the length of the marriage*;

(6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage and the present status of the property;

(7) *the increase or decrease in each party's income since the prior judgment* or order from which a review, modification, or termination is being sought;

(8) *the property acquired and currently owned by each party after the entry of the*

*judgment of dissolution of marriage*, judgment of legal separation, or judgment of declaration of invalidity of marriage; and

      (9) any other factor that the court expressly finds to be just and equitable."

(Emphases added.) *Id.* § 510(a-5).

Finally, "In each case involving the issue of maintenance, *** the court shall state its reasoning for awarding or not awarding maintenance and shall include references to each relevant factor set forth in subsection (a) of this Section[.]" *Id.* § 504(b-2)(1).

¶ 46     The trial court explicitly discussed Ellen's circumstances as they related to the statutory factors and the standard of living established during the marriage, but it did not explicitly reference John's circumstances nor any of the remaining statutory factors. Failure to consider one party's income or assets in determining whether an award of maintenance is appropriate is an abuse of discretion. See *In re Marriage of Dea*, 2013 IL App (1st) 122213, ¶¶ 20-22. Because the court mischaracterized the initial maintenance award and referenced only Ellen's circumstances, it is unclear whether the trial court considered John's current income, the change in his income since the dissolution judgment, his current assets, his acquisition of assets since the dissolution judgment, or his present and future earning capacity. See 750 ILCS 5/504(a)(1), (3), (9) (West Supp. 2019); *id.* § 510(a-5)(7), (8). Additionally, it is unclear whether the trial court considered the duration of maintenance payments previously paid relative to the length of the marriage. See 750 ILCS 5/510(a-5)(5) (West Supp. 2019). Thus, we remand to the trial court to conduct a general review of the initial maintenance award and to consider the relevant statutory factors that apply to *both* Ellen's and John's circumstances as well as any of the other statutory factors the trial court determines to be relevant.

¶ 47         B. The Maintenance Guidelines May Not Be Applied on Review

¶ 48    Having concluded that a general review is the proper standard by which the trial court should evaluate Ellen's petition, we wish to address the parties' arguments with respect to which version of the IMDMA is applicable on remand. Specifically, we consider whether the maintenance guidelines in section 504(b-1)(1) of the IMDMA should be applied.

¶ 49    In maintenance review proceedings, section 510(a-5) enumerates nine statutory factors that a trial court must consider, in addition to the applicable factors enumerated in section 504(a). *Id.* § 510(a-5). Under the version in effect at the time of the parties' 2012 dissolution judgment (old IMDMA), the trial court would simply be required to consider the twelve statutory factors enumerated in section 504(a). Under the new version (new IMDMA), however, the trial court would be required to either grant or deny maintenance "in accordance with subdivision (b-1)(1)(A) of [section 504]." *Id.* § 504(b-8). Section 504(b-1)(1)(A), in turn, provides a guideline formula for calculating the maintenance amount where the parties' combined gross annual income is less than $500,000. *Id.* § 504(b-1)(1)(A).[2] The question, then, is whether the guideline formula may be applied via the new IMDMA to the instant review petition.

¶ 50    To answer this question, we ordered the parties to file supplemental briefs explaining how to construe section 801 of the IMDMA. Section 801, titled "Application," prescribes when, and to which proceedings, the IMDMA applies. See *id.* § 801.  Ellen argues that section 801 is "dynamic" in that it applies the version of the IMDMA "in effect at the time of any given litigation." She contends that "the directive of [section ]801 has always been, and continues to be, to apply the most current version of the law to the adjudication of yet unresolved proceedings and issues." See

---

[2]The trial court did not make a finding as to the parties' combined gross annual income at the time of the review.

*In re Marriage of Wig*, 2020 IL App (2d) 190929, ¶ 37 ("Section 801 controls the applicability of amendments to the [IMDMA]."). John agrees that section 801 generally applies, but further argues that review proceedings fall outside the scope of section 801, rendering section 801 inapplicable to review proceedings. See *In re Marriage of Brunke*, 2019 IL App (2d) 190201, ¶ 58.

¶ 51    The parties' agreement that section 801 generally applies to amendments to the IMDMA is consistent with caselaw predating Public Act 99-90, which has held that section 801 should be applied to *amendments* to the IMDMA. See *In re Marriage of Brown*, 127 Ill. App. 3d 831, 835 (1984) ("[W]e believe that the application of section 801 to the amendment in question here is both reasonable and appropriate."); *In re Marriage of Sweet*, 119 Ill. App. 3d 1033, 1040 (1983) ("Although section 801(d) is addressed to the Act itself, in our judgment it should be applied to amendments as well."); see also *In re Marriage of Smith*, 162 Ill. App. 3d 792, 795-96 (1987) (endorsing *Brown* and *Sweet*). "Where, as here, statutory language has acquired a settled meaning through judicial construction and that language is retained in a subsequent amendment of the statute, such language is to be understood and interpreted in the same way unless a contrary legislative intent is clearly shown." *People v. Villa*, 2011 IL 110777, ¶ 36. This court has stated that Public Act 99-90 created a "new" IMDMA which was "a comprehensive reworking of the [IMDMA] and contains, among other things, a provision adopting and amending section 801." *Benink*, 2018 IL App (2d) 170175, ¶ 27; see also 750 ILCS 5/801 (West 2016). The amendments to section 801, however, do not impact the question at hand and in no way suggest any disagreement, let alone a clearly-shown contrary legislative intent, with the settled understanding that section 801(c) dynamically applies to all IMDMA amendments. Accordingly, we agree with the parties that section 801(c) generally applies to newly enacted amendments to the IMDMA.

¶ 52    Accepting that section 801 applies to Public Act 99-90's amendments to the IMDMA, we next consider whether the guidelines apply to review proceedings stemming from dissolution judgments predating those guidelines. In answering this question, we acknowledge that the appellate districts are split as to whether the new maintenance guidelines should be applied to the review of a maintenance award that was entered before the effective date of the guidelines. Compare *Brunke*, 2019 IL App (2d) 190201, ¶ 58 (holding that section 801(c) does not include maintenance review proceedings), with *Kasprzyk*, 2019 IL App (4th) 170838, ¶ 37 (holding that section 801(c) includes maintenance review proceedings).  For the reasons expressed below, we continue to adhere to our decision in *Brunke*.

¶ 53    In *Brunke*, we held that the new maintenance guidelines did not apply to the review of a pre-guideline maintenance award. *Brunke*, 2019 IL App (2d) 190201, ¶ 58. In doing so, we noted the command of section 801(c) that "[t]his Act applies to all proceedings after its effective date for the *modification* of a judgment or order entered prior to the effective date of this Act." (Emphasis added.) 750 ILCS 5/801(c) (West 2016). We noted that that section referred only to modification proceedings "when it made the guidelines applicable through amended section 801(c)"; thus, we concluded, "[t]he absence of the word 'review' in amended section 801(c) implies the legislative intent to exclude review proceedings." *Id.* ¶ 56. Accordingly, we held the maintenance guidelines did not apply to the review proceedings. *Id.* ¶ 58.

¶ 54    The Fourth District reached a contrary conclusion in *Kasprzyk*, 2019 IL App (4th) 170838. There, the court considered section 801(c) and concluded that "the legislature did not intend section 801(c)'s language [that] 'proceedings commenced after its effective date for the modification of a judgment' to mean only 'modification proceedings.' " *Id.* ¶ 36. The court explained that the only distinction between review proceedings and modification proceedings is

the basis for the court's authority to modify the original maintenance award: in review proceedings, the court grants itself authority to review, whereas in modification proceedings, the legislature provides such authority. *Id.*

¶ 55 We respectfully disagree with the court's reasoning in *Kasprzyk* and continue to adhere to our holding in *Brunke*. As we explained in *Brunke*, the legislature would not have distinguished between review and modification proceedings if the distinction was not significant. *Brunke*, 2019 IL App (2d) 190201, ¶ 58 (citing *Strukoff v. Strukoff*, 76 Ill. 2d 53, 60 (1979)). Accordingly, the maintenance guidelines should not be applied on remand.

¶ 56                                    III. CONCLUSION

¶ 57 For the reasons stated, we reverse the judgment of the circuit court of Lake County and remand for further proceedings consistent with this order.

¶ 58 Reversed and remanded.